HENRY F. BUSWELL, administrator, *vs.* ROBY G. FULLER.

Norfolk.    January 18, 1894. — April 5, 1894.

Present: FIELD, C. J., ALLEN, MORTON, & BARKER, JJ.

*Promissory Note — Gift.*

Where the payee of a promissory note handed it to the maker, saying, " I will give you this, — this note, as I have never helped D. [his son, and the maker's husband] hardly any," and the maker took it, folded it up, and put it in her pocket-book, where it remained for an hour or more, until the payee asked her to let him have it to keep to indorse the interest, and she returned it to him, and continued thereafter to pay interest thereon, the inference is justifiable that both the payee and the maker understood that the handing of the note to the maker was not a full gift; but if the transaction was a completely executed gift, and the new agreement to pay interest was a separate transaction, it is immaterial how much time elapsed between the making of the gift and the new agreement, and this question should be submitted to the jury.

CONTRACT, on a promissory note for seven hundred dollars, payable on demand to the plaintiff's testator.

After the former decision of this court, 156 Mass. 309, the case was tried in the Superior Court before *Blodgett*, J., who ordered a verdict for the plaintiff ; and the defendant alleged exceptions. The facts appear in the opinion.

*S. H. Tyng & E. B. Powers*, for the defendant.

*H. F. Buswell, pro se.*

BARKER, J. What occurred at the interview when the alleged gift was made is not now told as it was in the former bill of exceptions. As there stated, the substance of the transaction was that the donor passed the note to the defendant, and said he would give it to her, and that she at first supposed he was to let her keep it; but he immediately said he would like to have it so that he could indorse the interest, and, after holding it long enough only to look it over and count up the payments of interest, she returned it with a remark in reference to the future payments of interest, and thereafter paid interest to the donor during his life, signing a new note when the old one was covered with the indorsements. Upon this statement, it was held that the donor never meant to give up his right to have the interest paid while he should live, and that there was no evidence that he intended to give up the possession of the note so that he could no longer avail himself of it for the collection of interest, or that the defendant ever understood that she was to have it absolutely in his lifetime. This was put upon the grounds, that, " if when he handed her the note she supposed he was going to let her keep it, he immediately corrected her misunderstanding by telling her that he was to retain it so that he could indorse the interest on it "; and that " there was nothing to indicate that there were two separate transactions, one an absolute giving up of the note and a relinquishment of all claim under it, and the other a new arrangement, without consideration, that interest should be paid during his life, and that the note should be given back to him by the defendant as evidence of her voluntary promise to pay interest."

At the new trial, the sole issue was whether there was in fact a perfected gift. The evidence tended to show that when

the defendant in 1875, and again in 1878, offered to pay a part of the principal, the testator had refused to receive it, saying that he did not wish her to pay anything on the principal, and that all he wished her to do was to pay the interest; that in 1881 he came to her house, and that the two were together there in a room in which was her son also, ill upon a lounge; that the testator took the note from his pocket, and handed it to her, saying, " I will give you this, — this note, as I have never helped Daniel [his son and her husband] hardly any, — he has been a good and faithful son to me "; that she took the note, and accepted it, and looked it over and counted the indorsements, and remarked that she had paid nearly half of the principal in interest, and then folded up the note and put it in her pocket, and, as she thought, in her pocket-book, where it remained an hour or more, and until the old gentleman was about to leave ; that during this interval of an hour or more the conversation was about other matters, and was shared in by the defendant's son ; that just as the testator was about to leave, he again, for the first time since she had put the note in her pocket, referred to the note, and asked her to let him take it, so that he might have it to keep to indorse the interest upon, but did not tell her that he wanted her to pay interest on it thereafter, and that she then returned him the note; that later on he told her that he wanted the interest to pay his taxes with as long as he lived; that he never asked her for any part of the principal, but she continued to pay the interest, though not always regularly; and that the new note was written by him because there was not room to indorse the interest upon the old one, as that was nearly covered with indorsements. The testimony as to what happened at the interview came from the defendant, and was corroborated by her son, who was present. There was also evidence that the alleged donor had told two other persons, who were witnesses, that he had given the note to the defendant.

The handing of the note to her, with the declaration, " I will give you this, — this note," with evidence that she took the note and accepted it, and, after examining it and speaking about the payments which had been made upon it, put it away in her own pocket and kept it there while the conversation went on about

other things and with another person for an hour or more, if not controlled, would require a finding of a completed gift. But the parties to the transaction were an old gentleman and his daughter in law, and the interview was part of a familiar visit made by a father at his son's house. The note was not something which he had procured as a gift for the defendant, and this talk about it was not the first which the parties had had, nor the last. If, when after an hour or more but before the parties separated he asked for the note, she had declined to give it back and had claimed that it was her own, the case would have been quite different. As she did not decline to return the note upon his first request, and continued to pay him interest for years, signing the new note at his request, the inference is justifiable that both understood that the handing of the note to her with the words stated was not a full gift of the note, and that both understood that during his life he was to receive the interest, and that she was to pay it as before.

But if the transaction was a completely executed gift, and the new agreement to pay interest was a separate transaction, it is immaterial how much time elapsed between the making of the gift and the new agreement. Whether this instruction should have been given and the case submitted to the jury, or the verdict for the plaintiff was rightly ordered, depends upon whether a verdict for the defendant upon the whole evidence could fairly be allowed to stand. Is the inference from all the circumstances that there was no design to make and receive an absolute and complete gift of the note one which is so strong and clear that a court which sits to do justice cannot accept a contrary conclusion if arrived at by a jury? In this connection, the testimony of the two persons to whom the alleged donor said that he had given the note to the defendant is of importance, as tending to prove by evidence which is not shown to come from interested persons that there was an actual gift of the note. The relationship of the parties, and the footing upon which the old gentleman would seem to have stood with the defendant and her family, are not unfavorable to the supposition that she might, in an hour after having accepted from him an absolute gift of the note, have returned it to him at his request as a new transaction and without consideration.

The plaintiff asked the court to rule that " the above recited facts did not, as matter of law, disclose a defence to his action," and the court allowed this motion of the plaintiff, and directed a verdict for him. We interpret this to mean that, in the opinion of the presiding justice, the case as presented at the second trial was so substantially identical with that already passed upon by this court that he would not be justified in submitting to the jury the question whether the gift and the new agreement to pay interest were separate transactions. Upon the whole, we are of opinion that, as the case is now presented, there is evidence proper to submit to a jury.

*Exceptions sustained.*