The People of the State of New York, Respondent, *v.* The Granite State Provident Association, and David A. Taggart, as Assignee of the Granite State Provident Association, Appellant.

1. Foreign Corporation — Insolvency — Distribution of Assets — Imposing Conditions to Protect Domestic Creditors. While the courts of this state have no right to favor domestic creditors in the distribution of the assets, within its jurisdiction, of an insolvent foreign corporation, before sending out of the state its assets for which a trustee has been appointed at its domicile, they may guard against discrimination by the trustee against domestic creditors and shareholders by requiring a bond conditioned that they shall be entitled to the same dividend as other creditors and shareholders throughout the country, without any deduction on account of a special fund deposited in the state for their benefit.

2. Deposit by Foreign Building and Loan Association — Distribution of, in Case of Insolvency — Equal Privileges and Immunities. The application of the special deposit made by a foreign building and loan association, pursuant to the próvisions of section 14 of the Banking Law (L. 1892, ch. 689), as a condition of its right to transact business, to the exclusive benefit of the domestic creditors and shareholders, in case of the insolvency of the association, as provided in section 33, does not infringe upon the provision of section 2, article 4 of the Federal Constitution, that the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states.

*People* v. *Granite State Provident Assn.*, 41 App. Div. 257, affirmed

(Argued December 7, 1899; decided January 9, 1900.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered July 29, 1899, modifying, and affirming as modified, a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*J. Newton Fiero* for appellant. Sections 14 and 33 of the Banking Law do not contemplate that shareholders and creditors in this state shall be paid more than their ratable share or proportion of the assets of the association, and the special fund must be so treated. (2 R. S. ch. 8, tit. 4, § 79; Code

Civ. Pro. § 2429.) The shareholders are partners, and no one partner has a right to receive a greater share of the assets than another. The total assets must be divided among the partners according to the interest of each. (Endlich on Building Assns. §§ 77, 711; *Hall* v. *Paris,* 59 N. H. 71; *Simpson* v. *Sav. Bank,* 56 N. H. 466; *Coggeswell* v. *Bank,* 56 N. H. 43; Morawetz on Priv. Corp. §§ 279, 302; *Ward* v. *Maryland,* 79 U. S. 418; *Hooper* v. *California,* 55 U. S. 648; *Hall* v. *Virginia,* 75 U. S. 168.) The shareholders within the state have, under the by-laws and through their contracts with and applications to the association, waived their rights to a preference and agreed that the laws of New Hampshire shall govern the distribution of all the funds of the association. (*Maynard* v. *G. S. P. Assn.,* 92 Fed. Rep. 435.) The authorities in other states upon the precise point in controversy are to the effect that the fund deposited with the superintendent of banks is a guaranty fund, and not to be distributed exclusively to stockholders and creditors in this state. (*Irwin* v. *G. S. P. Assn.,* 56 N. J. Ch. 249; *Maynard* v. *G. S. P. Assn.,* 92 Fed. Rep. 435; *Blake* v. *McClung,* 172 U. S. 239.) The Appellate Division erred in requiring an undertaking from defendant Taggart as a condition for payment to him of the general fund for distribution. (*Smith* v. *Taggart,* 87 Fed. Rep. 94.)

*George M. Mackellar, Clarence Lexow* and *John C. Davies, Attorney-General,* for respondent. The judgment directing the holding of the special fund as security for the creditors and stockholders of the association in this state, and providing for the distribution thereof among such creditors and stockholders in the event of the general fund being insufficient to pay them in full, is proper. (L. 1892, ch. 689, §§ 14, 33; *People* v. *Remington,* 121 N. Y. 328; *Bates* v. *Paddock,* 8 N. E. Rep. 258; *Midgeley* v. *Slocomb,* 32 How. Pr. 423; *Lewis* v. *A. S. & L. Assn.,* 98 Wis. 203; *Mason* v. *Bogg,* 2 M. & C. 448; *Evertson* v. *Booth,* 19 Johns. 486; *Bernhardt* v. *Lymburner,* 85 N. Y. 172.)

O'Brien, J.    The only question in this case is one concerning the distribution of a fund now under the control of the courts of this state, which is owned by a foreign corporation. The defendant corporation was created by the laws of New Hampshire as a building and loan association, and was permitted to transact business in this state. In January, 1896, the authorities of the state where this corporation is domiciled took proceedings in the courts of that state to restrain it from any further prosecution of its business. In this proceeding an assignee or trustee was appointed to take charge of the property as provided by the local law. Subsequently, this action was brought in the courts of this state by the attorney-general in behalf of the People, under the provisions of the Code, for the sequestration and preservation of the assets and property of the corporation in this state, and for an equitable distribution of the same among the persons entitled thereto. In order to carry out the objects of the action a receiver was also appointed in this state. The New Hampshire assignee upon his own application was made a party to the action, and so is bound by the judgment.

It appears from the record that the corporation transacted business in several other states. The stockholders, at the time of the appointment of the receiver in this state, exceeded in number twenty thousand, of whom nearly one-sixth were residents of this state, and about one-fourth of the assets was located here; or, at least, the situation was such that they could not be collected or distributed except through the action of the courts of this state. The fund in controversy may be divided into two parts. About $69,000 represents assets of the corporation collected by the receiver in this action from the foreclosure of mortgages and other obligations due from parties in this state, and the sale of some realty located in this state. The securities thus collected were transmitted to the receiver by the assignee in New Hampshire under the direction of the courts of that state. The other part of the fund consists of a special deposit of $100,000, which the corporation was required to make under the Banking Law of this

state, in order to acquire the right to transact its business here.

With respect to that part of the fund first mentioned, which is described in the record as the general fund, the court below, by the amendment of the original judgment, directed the receiver in this state, after paying the expenses of the receivership, to transmit the same to the assignee in New Hampshire for general administration, upon receiving from such assignee at the domicile a bond or undertaking in a sum equal to double the amount to be so paid over, with sufficient sureties to be approved by a justice of the court, conditioned for the payment by the assignee of the domicile to each creditor and shareholder resident in this state of the same dividend on his claim that may be awarded other creditors and shareholders throughout the country, without any deduction on account of any sum the creditor and shareholder of this state might receive from the special fund hereafter mentioned; and that in default of such payment to the domestic creditors and shareholders, that the foreign assignee would return to the receiver in this state, or his successor, the general fund so paid over. The only objection made to this part of the judgment is to the provision which requires the assignee at the domicile to execute the bond before described as a condition of receiving the fund in the hands of the domestic receiver. The general assets of a corporation are to be administered and distributed at the home of the corporation; but in order to accomplish that result, ancillary trustees or assignees must frequently be appointed in other jurisdictions, subject to the control and direction of the local courts. All creditors of a corporation, wherever residing, are entitled, in case of insolvency, to have the general assets distributed among them upon principles of perfect equality.

The courts of one state have no right to favor domestic creditors in the distribution, but it must be made upon the principle that equality is equity. (*Blake* v. *McClung*, 172 U. S. 239.)

In the case at bar the foreign assignee is a party to the

action upon his own application ; he asks for the transmission to him in another state of the fund now under the control and in the custody of the courts of this state through the receiver. We think that the court below, in directing the transmission of the fund to another jurisdiction, had the power to impose such conditions as are just and reasonable, with a view to the protection of domestic creditors, and that was the only purpose for which the bond or undertaking was required. We do not think it can be said, as matter of law, that the court was bound to direct the transmission of the fund to the administration at the domicile without exacting any conditions whatever. It doubtless had the power to do so if it was thought to be wise and expedient. But it determined that before sending the fund out of the jurisdiction of the court, it was just and reasonable to require the foreign assignee to give security to the effect that he would distribute the fund upon principles of perfect equality. In other words, the court had power to guard against any discrimination on the part of the foreign assignee against domestic creditors by reason of any trust fund which was held in this state for their benefit. (*People* v. *Remington*, 121 N. Y. 328.) We think, therefore, that no rule of law or any absolute legal right of the foreign assignee was violated by that provision of the judgment requiring him to give the security referred to.

The fund in the hands of the domestic receiver, arising from the conversion of the special deposit in the banking department, stands upon a different ground. The defendant, in order to acquire the right to transact its business in this state, was obliged to make this deposit since the statute so provides. If this was a deposit as security merely for domestic creditors, we would be inclined to agree with the learned counsel for the defendant, who insists that this fund should be devoted to the benefit of all creditors equally wherever residing. But it is something more than a mere deposit as security. It is in the nature of a fund held in trust for the benefit of domestic creditors and shareholders of the defendant. The deposit was made in obedience to section fourteen of

the Banking Law, as a condition of the defendant's right to transact business here. By section thirty-three it is provided, in substance, that upon the appointment of the receiver of a corporation in this state the superintendent of the banking department shall pay over to him the funds remaining in his hands, less any charges that he may have against the same, and the receiver shall distribute these funds among the creditors and shareholders of the corporation residing in this state in the manner prescribed by law for the payment of creditors in the case of voluntary dissolution of a corporation. It is apparent from the provisions of these two sections, that the securities so deposited were held by the superintendent as a trustee for domestic creditors and shareholders. The defendant corporation in making the deposit must be deemed to have consented that in case of insolvency the fund might be distributed according to the terms of the statute ; that is to say, to creditors and shareholders residing in this state. So that by the act of the corporation itself, in availing itself of the benefit of the statute, it has devoted this fund to the benefit of the domestic creditors and shareholders; at least so far as to enable them to receive payment upon all their obligations in full. Therefore, the application of the fund to their benefit in the first instance does not infringe upon the provision of the Federal Constitution that citizens of each state shall be entitled to all the privileges and immunities of citizens in the several states. (*Blake* v. *McClung, supra.*)

The court below, therefore, directed that this fund be disposed of in the following manner, after paying the expenses of administration : (1) In case the foreign assignee should give the undertaking provided for, with respect to the general fund, and the whole fund received by him was insufficient to pay all the creditors throughout the country in full, then the domestic receiver should pay from this special fund the balance of all just claims due to the creditors residing within this state at the time of his appointment, and after such payment distribute the balance of the special fund remaining in his

hands among the different shareholders residing within this state until they were paid in full.

(2) In case the fund in the hands of the foreign assignee should prove to be sufficient to pay all the creditors in full, but insufficient to pay the shareholders throughout the country in full, then the domestic receiver should distribute the balance remaining in his hands to the domestic shareholders at the time of his appointment until they were paid in full.

(3) That in case anything remained in his hands after paying the claims of the creditors and shareholders in this state in full and all expenses, the same should be paid to the assignee at the place of the domicile.

Assuming that the special deposit referred to was a fund held in trust here for the benefit of domestic creditors and shareholders, as we think it was, there is no legal error in this principle of distribution. It is quite true, as the counsel for the defendant suggests, that it impounds a large sum, a part of the assets of the corporation, for the benefit of creditors here. But we think the answer to all that is, that there is no injustice in devoting the fund to the very purpose for which it was created and sent here. The corporation could have declined to enter the state upon such conditions, but having accepted them by making the deposit, no creditor or shareholder in any other state can complain because the courts of this state have, with the consent of the corporation, devoted the fund in the first instance to the payment of home creditors and shareholders. The defendant virtually consented, when it made the deposit, that it should be distributed in this manner in case of insolvency.

The judgment appealed from should, therefore, be affirmed, with costs to the foreign and domestic receivers, respectively, to be paid out of the general fund.

Parker, Ch. J. (dissenting). I am unable to agree with so much of the judgment about to be affirmed as requires the New Hampshire assignee to give an undertaking as a condition precedent to his receiving the moneys, which the court

holds he should receive, for distribution to general creditors. . This does not involve the special fund of $100,000, deposited with the superintendent of banks for the benefit of creditors residing within this state, but relates solely to the fund resulting from the foreclosure of mortgages and other assets of the Granite State Provident Association, that were by the courtesy of the New Hampshire court and the assignee turned over to a receiver in this state of the property of that corporation situated here. The New Hampshire court did not require that the New York ancillary receiver should give a bond on the turning over of such assets for collection, and if the proceeds, less the expenses of collection and of administration, should be transmitted to the New Hampshire assignee to be distributed, as all are agreed it should be, like courtesy commands that it should go unhampered by any condition whatever. Comity requires that full faith and confidence should be given to the Supreme Court of New Hampshire, and the presumption ought to be indulged that that court will compel the assignee to make a just distribution of the fund which may be in his hands, and will not countenance any dereliction of duty on his part. The precedent that this decision will constitute seems to me an unfortunate one, with decidedly mischievous tendencies in a country having forty-five states, with necessarily as many independent jurisdictions. I advise that the money be paid without condition.

All concur, with O'Brien, J., for affirmance, except Parker, Ch. J., who reads dissenting opinion.

Judgment affirmed.