Hillsborough, &#125;
  Dec., 1900. &#125;

BANK COMMISSIONERS *v.* GRANITE STATE PROVIDENT ASSO-
CIATION.

Where an insolvent corporation is in process of dissolution under the laws of this state, a judgment of the court of a state in which ancillary administration is had is conclusive here only so far as it relates to property within the limits of that state, although an assignee appointed by this court was party to the proceedings.

Non-resident creditors of an insolvent corporation, who have participated in the distribution of a fund set apart for their benefit, may prove their claims for unpaid balances in an insolvency proceeding in this state.

Non-resident creditors of an insolvent corporation, who have participated in a division of unpledged assets by an ancillary receiver, are entitled to share in a general distribution under the laws of this state to the extent of equalizing their total dividends with those paid to domestic creditors.

PETITION, by the assignee of the Granite State Provident Association, for a decree as to the distribution of the funds in his hands. The facts appear in the opinion.

*John Hatch,* for the plaintiffs.

*Taggart & Bingham,* for the assignee.

*Harry E. Loveren, Lexow, Mackellar & Wells* (of New York), and *Harry S. Bandler* (of New York), for the New York receiver.

*Harry E. Loveren* and *Howard W. Hayes* (of New Jersey), for the New Jersey receiver.

*Harry E. Loveren*, for the Michigan and Rhode Island receivers.

*Drury & Hurd*, for Maryland shareholders.

*Edward I. Baker* (of Massachusetts), for Cobe and others, assignees of certificate holders.

CHASE, J.    The defendants were incorporated in this state in 1881, and were authorized, among other things, to carry on the business of a building and loan association.    Laws 1881, *c.* 233. Upon petition of the plaintiffs, David A. Taggart was appointed assignee of their property and effects, March 18, 1896, under the provisions of section 15, chapter 162, Public Statutes.    He accepted the trust and has substantially converted all the assets in his possession into cash.    The defendants did business in twenty-four states, and ancillary receivers were appointed in sixteen of them.    These receivers have also substantially converted the assets received by them into cash.    Some of them are ready and willing to remit their balances of cash above expenses, etc., to the assignee; some have refused to remit; and some are undecided whether they will remit or not.

The assignee has on hand a sufficient sum of money to pay the expenses of administration in this state and the debts that have been proved here, and leave a balance for distribution among shareholders.    The shareholders number over 20,000.    More than 3,000 of them reside in New York.    The defendants deposited $100,000 with the New York superintendent of banks, in compliance with the provisions of the banking law of the state, in order to secure the privilege of doing business there.    An ancillary receiver in that state was appointed in an action brought by the attorney-general in behalf of the people, for the sequestration and preservation of the assets and property of the defendants in the state, and for an equitable distribution of the same among the persons entitled thereto.    Taggart appeared in the action and claimed that the funds collected by the receiver should be paid to him for distribution.    The receiver has realized about $69,000 from the sale of real estate located there, and from collections upon mortgages and other obligations due from parties in that state, sent to him by the assignee under authority given by this court.    He also has received from the superintendent of banks the $100,000 above mentioned.    For convenience, the first named sum is hereinafter designated as the general fund, and the last named as the special fund.    Creditors residing in New York have claims amounting to nearly $117,000; and the aggregate par value of the shares of shareholders residing there is upwards of $200,000.    The court of that

state has adjudged that the receiver pay to Taggart the general fund less costs, etc., upon his giving an undertaking with sufficient sureties, in a sum double the amount so paid, to pay the New York creditors and shareholders the same rates of dividend that are awarded to other creditors and shareholders throughout the country, without deduction on account of payments to the former of dividends from the special fund; or, in default of so doing, to return the general fund to the New York receiver. As to the special fund, the court decreed that after deducting costs, etc., it should be applied first to the payment of the balance, if any, due New York creditors, and then to the payment of New York shareholders in proportion to their respective claims until paid in full, and finally, if any balance was left, to pay it to the assignee.

1. One question raised relates to the effect of the decision in the New York case, *People* v. *Association,* 161 N. Y. 492. Is this court bound to distribute the fund within its control so that New York shareholders shall receive the same percentage thereof that shareholders outside that state receive, notwithstanding the New York residents according to that decision are entitled to additional payments from the funds in that state?

It has been decided by the United States supreme court that a judgment in a state court against a person appointed receiver ancillary to an appointment by a court of another state, binds only the property that is in his custody as receiver within the state in which the judgment is rendered. *Reynolds* v. *Stockton,* 140 U. S. 254. In the opinion it is said (*p.* 272) : " Whatever orders, judgments, or decrees may be rendered by the courts of another state, in respect to so much of the estate as is within its limits, must be accepted as conclusive in the courts of primary administration ; and whatever matters are by the courts of primary administration permitted to be litigated in the courts of another state come within the same rule of conclusiveness. Beyond this, the proceedings of the courts of a state in which ancillary administration is held are not conclusive upon the administration in the courts of the state in which primary administration is had. And this rule is not changed, although a party whose estate is being administered by the courts of one state permits himself or itself to be made a party to the litigation in the other."

This court, then, is bound by the New York decision so far as it relates to the property within the limits of that state, and no further. The appearance of the assignee in the action did not enlarge its binding effect here, for the reason, if for no other, that the issue alleged, heard, and decided in the action related solely to the rights of the parties in the property located in that state.

The decision as to the general fund was that all the creditors of

the corporation, wherever residing, are entitled to have it distributed among them "upon principles of perfect equality." Upon this point the court say, citing *Blake* v. *McClung*, 172 U. S. 239, in support of the proposition: "The courts of one state have no right to favor domestic creditors in the distribution, but it must be made upon the principle that equality is equity." The decision as to the special fund was that it was a trust fund set apart by the defendants for the benefit of the creditors and shareholders residing in New York. The decision is based upon the provisions of the local statute, in compliance with which the defendants deposited the fund with the superintendent of banks to obtain the privilege of doing business in the state. The court say, "that by the act of the corporation itself, in availing itself of the benefit of the statute, it has devoted this fund to the benefit of the domestic creditors and shareholders; at least so far as to enable them to receive payment upon all their obligations in full. Therefore, the application of the fund to their benefit in the first instance does not infringe upon the provision of the federal constitution that citizens of each state shall be entitled to all the privileges and immunities of citizens in the several states." The condition imposed upon the transfer of the general fund to this state was not complied with, and the fund remains in the possession of the New York receiver. Consequently, the question before the court is not attended with complications that might arise if the general fund had been received by the assignee upon the terms stated in the New York judgment.

The defendant corporation was incorporated in this state; this was its corporate home. Creditors and shareholders of the corporation, when they became such, wherever the transaction took place, impliedly agreed that in case of insolvency the final settlement of the corporation's affairs should be made in this state and be governed by the laws of the state. *Canada Southern R'y* v. *Gebhard*, 109 U. S. 527; *Hawkins* v. *Glenn*, 131 U. S. 319, 331, 332. The provisions of the statute of this state relating to the insolvency of an institution of this kind (P. S., c. 162, ss. 12–25) form a complete system of insolvency law, under which the property of the institution may be placed in the custody of the law, converted into money, and divided among its creditors, and the corporation practically dissolved. In a case decided at this term (*Bank Comm'rs* v. *Trust Co.*, *ante*, *p.* 536), it was held that the legislature intended that the bankruptcy rule, so called, should apply in the proof of secured claims in a proceeding under these provisions; that is, that such a creditor should be allowed to prove only the balance of his claims above the value of his securities. Applying this principle to the case in hand, and giving the decision

in *People* v. *Association* full effect, it follows that the creditors and shareholders residing in New York are entitled to prove in this proceeding only the balances of their claims above the payments to which they are entitled under the New York decision. This would have been the result if they had resided in this state and the special fund had been pledged to them collectively as security for the payment of their respective claims. It is said by the New York court that the transaction by which the fund was lodged with the superintendent of banks was " something more than a mere deposit as security "; that it was " in the nature of a fund held in trust for the benefit of domestic creditors and shareholders." Stating the proposition in another form, the interest of the New York creditors and shareholders in the fund is in the nature of the interest of *cestuis que trustent* in a trust fund, created, first, to pay those of them who are creditors simply their claims in full or proportionately ; second, to pay from the balance, if any, those who are shareholders their claims in full or proportionately ; and, third, to pay the ultimate balance, if any, to the assignee. The fact that the transaction creating the rights of the creditors and shareholders was in the form of a trust instead of a pledge does not make the rule above mentioned any the less applicable to it. The object was security, and the difference is one of words rather than substance. In either case the creditors and shareholders have the right to have the fund set apart by the defendants for their benefit appropriated accordingly. The insolvency proceeding creates the necessity for a settlement of the trust, the same as for the settlement of pledges. The event upon the happening of which the trust was to be executed has arrived, namely, inability of the defendants to pay their obligations in full. Under these circumstances, the statutes of this state require the New York creditors, in common with all other secured creditors, domestic and foreign, to apply the value of their securities to their claims, and prove for the balance. They have the right to prove the claims here, but they must prove them as they are,— that is, as secured claims. *Goodall* v. *Marshall,* 11 N. H. 88 ; *Loomis* v. *Farnum,* 14 N. H. 119. When creditors offer their claims for proof, the law of this state says to all alike, make the proper allowance for your securities, and the balance will be allowed. If difficulties may arise in some cases in determining the value of securities, there is none in this case. The securities have been converted into cash, and the cash is in the custody of the New York receiver. Creditors have presented claims there amounting to nearly $117,000 ; there is about $69,000 in the possession of the New York receiver, which must be applied toward the payment of the claims there, since the receiver, under the direction of the

court, declines to send the money to the assignee. This money·is applicable in the first instance to the payment of debts. So applying it, there will be a balance of some $48,000 of the New York debts unpaid; and for the payment of this balance the special fund is security. This fund is sufficient to pay the balance and leave about $52,000 for payment of shareholders' ·claims,— leaving a balance of about $148,000, or 74 per cent, of those claims unprovided for if the claims are provable at their par value. These figures are used merely by way of illustration. The facts are not definitely stated in the °case, and must be determined at the trial term. The point is that the balances of the shareholders' claims, whatever they may be, are provable in this proceeding, and upon them the owners are entitled to share in the distribution of the funds under the control of this court, in common with all other shareholders, domestic and foreign.

2.    There is a special fund in·New Jersey, but the facts in relation to it are not reported. If what has been said regarding the New York fund does not dispose of the questions pertaining to the New Jersey fund, the latter must be considered upon a new case.

3.    Another question reserved relates to the rights of unsecured shareholders who reside, or have proved claims, in states where there are ancillary receivers who have not transferred the money in their possession to the assignee for distribution.

The statute provides that the remainder of the proceeds of the property, after the payment of the expenses of the assignment and the " debts, claims, and obligations owing by the institution," shall be "·divided among the stockholders according to their interests." P. S., c. 162, s. 20. The principle that " equity is equality " is here recognized. The division contemplated is one made " upon principles of perfect equality." *Blake* v. *McClung*, 172 U. S. 239. The statute makes no distinction on account of the residence of shareholders; it regards all alike wherever they reside. Their interests are represented by the amounts of their claims as allowed in the proceeding. Each shareholder, whether domestic or foreign, is entitled to receive the same percentage upon his claim as every other shareholder receives. Such a ·division could be. more conveniently made if all ancillary receivers would transfer their funds to the assignee. It would be a simple problem to determine what percentage the single fund thus formed would be of the amount of all the claims, and to distribute the fund accordingly. In view of the certainty of such division and the convenience of this method of making it, it seems probable that all ancillary receivers, acting under the direction of the courts appointing them, will forward their funds to the assignee. The case is eminently one that

requires the co-operation of all courts which have jurisdiction of any of the funds, in order to attain the object desired by all with the least delay and expense, and the least liability to error. If, however, the funds in any state are withheld for any reason from the assignee, the court here will be obliged to undertake the difficult task of securing indirectly equality in the distribution. *Goodall* v. *Marshall*, 11 N. H. 88, 101. In that case it will be necessary to ascertain what shareholders receive or are entitled to receive dividends in the other states, and the amount of such dividends. If the receiver in any state retains the funds in his possession, and they are sufficient in amount to pay the shareholders who have proved their claims in the state a larger percentage than shareholders generally will be entitled to under the distribution to be made here, such foreign shareholders will not be entitled to any portion of the funds here. For example, if the percentage to which shareholders generally will be entitled proves to be thirty, and certain shareholders will receive thirty-five per cent from one or more ancillary receivers, they will be entitled to nothing in this proceeding; if they receive only twenty-five per cent, they will be entitled to receive here an additional five per cent. The remarks of the court in a recent English case upon a kindred question are pertinent in this connection. The court said: "No doubt, in a case in which French assets were distributed so as to give French creditors, as such, priority, in distributing the English assets the court would be astute to equalize the payments and take care that no French creditors should come in and receive anything till the English creditors had been paid a proportionate amount. But subject to that, which is for the purpose of doing what is equal and just to all the creditors, I know of no law under which the English creditors are to be preferred to foreigners." *In re Kloebe*, 28 Ch. Div. 175, 177. See, also, *Blake* v. *McClung*, 172 U. S. 239, 257.

*Case discharged.*

PARSONS and PEASLEE, JJ., did not sit: the others concurred.