

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

September 10, 1958

Hon. Jesse James
State Treasurer
Austin, Texas

Opinion No. WW- 497

Re: Can the Commissioner of
Insurance delegate the
responsibility of approving
the securities deposited
with the State Treasurer
under Articles 3.15, 6.09,
8.05, 14.10 and 17.25,
Section 4, of the Insurance
Code? Is a general court
order placing an insurance
company in receivership
sufficient authority for
the Treasurer to release
such deposits to the re-
ceiver?

Dear Mr. James:

You have requested from this office an opinion
on the following questions:

A. Whether the State Board of Insurance and/or
the Commissioner of Insurance has the authority to delegate
to any employee of the State Board of Insurance other than
the Board members or the Commissioner of Insurance the power
of approval of securities for deposit with the State Treasurer
under Articles 3.15, 6.09, 8.05, 14.10 and 17.25, Section
4, of the Insurance Code, the withdrawal of such securities
so deposited and/or the substitution of other securities
for the securities withdrawn.

B. Whether a general court order placing a com-
pany in receivership is sufficient authority for this depart-
ment to release any collateral deposited in this office by
the affected company to the liquidator.

The articles in question require or permit deposits
of securities with the State Treasurer by certain classes
of insurers in the State and in connection therewith either
refer to action by the "Board of Insurance Commissioners"
or "the Board".

All of the "powers, functions, authorities, preroga-
tives, duties, obligations or responsibilities" formerly vested
in the State Board of Insurance Commissioners have been vested
in the State Board of Insurance by Article 1.02(b), Acts
1957, 55th Leg., ch. 499, p. 1454, Sec. 2. These powers,
functions, etc., by the terms of the same article are to be
"exercised, performed, carried out and administered" by the
Commissioner of Insurance as the chief executive and administra-
tive officer of the Board. The duties of the Board itself
are limited primarily to those of a supervisory nature. There-
fore, the Commissioner of Insurance has the authority to per-
form all of the acts formerly required of the "Board of In-
surance Commissioners" or "the Board" in connection with the
above mentioned deposits. Opinion No. WW-166. The question
then arises as to whether such authority and responsibility
can be delegated, it being fundamental that powers and functions
which are discretionary or which require the exercise of
judgment cannot be delegated by a board or official to a
subordinate in the absence of express statutory or constitutional
authority. 73 C.J.S. 381. The "approval" of securities for
deposit clearly involves the exercise of discretion. See
Gustafson v. Wethersfield Tp. High School Dist., 49 N.E.2d 311
(App. Ct. of Ill. 1943). The only provision of the Insurance
Code which could possibly be considered as granting such
authority is Section (g) of Article 1.09 of the Insurance
Code, Acts 1957, 55th Leg., ch. 499, p. 1458, Sec. 2, which
provides:

> "The Commissioner of Insurance shall appoint
> such deputies, assistants, and other personnel as
> are necessary to carry out the duties and functions
> devolving upon him and the State Board of Insurance
> under the Insurance Code of this state, subject
> to the authorization by the Legislature in its
> appropriations bills or otherwise, and to the rules
> of the Board." (Emphasis added.)

It is our opinion that this provision, while clearly
allowing the Commissioner to delegate his ministerial responsi-
bilities to the assistants appointed pursuant thereto, does
not constitute legislative authorization for the delegation
of powers and functions which require the exercise of judgment.
Public Adm. Law, 42 Am. Jur. 387.

We have been furnished a copy of a letter signed by
Commissioner Harrison informing you that two named employees
of the Insurance Board "have been authorized to sign on be-
half of the Commissioner of Insurance the deposit and with-
drawal forms for securities placed with the State Treasurer. ..."

The act of signing such forms on behalf of the Commissioner and at his direction is a ministerial act falling within the purview of Section (g) above cited, provided the actual approval or disapproval of the securities involved is made by the Commissioner himself. See 107 A.L.R. 1477 and annotation following.

To answer your second question correctly it must first be determined whether or not a receiver becomes entitled to these deposits by the mere fact that the depositing company has been placed in receivership. None of the enumerated articles makes any provision for turning such deposits over to the receiver. Article 21.28, dealing with the liquidation, rehabilitation, reorganization or conservation of insurers, provides in Section 2(a) that:

> "Whenever under the law of this State a court of competent jurisdiction finds that a receiver should take charge of the assets of an insurer domiciled in this State, the liquidator designated by the Board of Insurance Commissioners as hereinafter provided for shall be such receiver. The liquidator so appointed receiver shall forthwith take possession of the assets of such insurer and deal with the same in his own name as receiver or in the name of the insurer as the court may direct." (Emphasis added.)

Subsection (b), Section 2, of the above article provides that "the property and assets of such insurer shall be in the custody of the court as of the date of the commencement of such delinquency proceedings." It would appear, then, that if the deposits in question constitute "assets" of the depositing corporation, the receiver is entitled to their possession. Section 1(c) defines "assets" for the purposes of this article as meaning "all property, real or personal, whether specifically mortgaged, pledged, deposited, or otherwise encumbered for the security or benefit of specified persons, or a limited class or classes of persons. The word 'asset', as used in this Article, includes all deposits and funds of a special or trust nature."

This definition is the result of an amendment to Section 1(c), being Acts 1955, 54th Leg., ch. 267, p. 737, Sec. 1. Prior to such amendment and since 1939, "assets" as used in this section was defined as follows:

> "'General assets' means all property, real or personal, not specifically mortgaged, pledged, deposited or otherwise encumbered for the security

or benefit of specified persons or a limited
class or classes of persons, and as to such
specifically encumbered property the term in-
cludes all in excess of the amount necessary
to discharge the sum or sums secured. Assets
held in trust and assets held on deposit, for
the security or benefit of all policyholders,
or all policyholders and creditors, in the
United States, shall be deemed general assets."

Deposits similar to those required under the In-
surance Code have been construed by the courts as constituting
special funds for the benefit of a particular class of creditors,
while others have been construed as being nothing more than
a deposit as security for the policyholders generally. The
importance of the distinction is shown by People v. Granite
State Provident Association, 161 N.Y. 492, 55 N.E. 1053, but
does not affect the answers to your questions. It will be
noted, however, that there is at least a question as to whether
or not those deposits constituting special funds were included
within the "assets" which the receiver was authorized to take
possession of prior to the amendment of Section 1(c).

There is a line of authority construing Article
749F (i) (1897), forerunner of the present Article 698, re-
lating to deposits required to be made by bond investment
companies as a condition precedent to doing business in this
State. The article, unlike those in question, specifically
provided for the receivership contingency in the following
terms:

"...In case of the failure of any company
covered by this act, the district court of the
county or city in which the principal office is
located, upon the application of one or more
shareholders, shall appoint a receiver for such
company, whose duty it shall be to wind up the
affairs, liquidate its debts, and distribute its
assets, using therefor, upon the order of the
court, the deposit previously made, to secure the
shareholders, with the State Treasurer, and the
State Treasurer is hereby authorized to pay out such
deposit in accordance with requisitions made upon
the State Comptroller by said receiver, and approved
by the court, upon the warrant of the State Comp-
troller."

It was concluded that such language made the deposit
unavailable to the receiver until final adjudication of the

rights of the parties interested in the fund had been made and the debts established. Ex Parte Stevens, 94 S.W. 327 (Sup.Ct. 1906), and Hart v. Stevens, 100 S.W. 135 (Sup.Ct. 1907).

Phillips v. Perue, 229 S.W. 849 (Sup.Ct. 1921), construed Article 4930, now repealed, relating to deposits required to be made by surety and guaranty companies, said article containing no directions to the State Treasurer as to the disposition to be made of such deposits in the event of insolvency. We find therein the following:

"We think it clear that the District Court of Walker County, under the circumstances shown, had the power to appoint a receiver of the fund, and also to disburse it through its receiver rather than through the State Treasurer. The law makes no provision for the Treasurer's converting the deposit into money, or for its distribution in the case of numerous claimants. To make an equitable distribution under such conditions was peculiarly within the province of a court of equity. ... There is nothing in the law that under the circumstances here present would require the court to disburse the fund through the Treasurer to the exclusion of its receiver."

Also applicable to our problem is the case of Holloway v. Federal Life Insurance Company, 21 F. Supp. 516 (Dist.Ct. W.D. Mo., W.D. 1937). The Superintendent of Insurance rather than the State Treasurer is custodian of the deposits required or permitted to be made by insurance companies doing business in Missouri. The case arose upon his refusal to turn such deposits over to a receiver. In determining he should be required to do so, the Court made the following observations:

"...A paramount question arises as to how the superintendent of insurance can apply the securities now held by him. He is not an executive receiver; he is not authorized to liquidate the company; and, moreover, the Federal Reserve Life Insurance Company is no longer a going concern. It was his duty to hold securities while the company was doing business, and to do so as trustee for policyholders in Missouri.

"A court of competent jurisdiction has taken over the Federal Reserve Life Insurance Company. It becomes the duty of the court to

direct the collection by its receiver of
all the assets of the company so that same
can be equitably and properly applied to
the discharge of the obligations of said
company. The court alone is capable of
determining what priorities, preferences,
and liens may be allowed and enforced
against said assets. The responsibility
of the superintendent of insurance as an
executive officer is completely discharged
when a court, whose duty it is to administer
the estate, calls for a surrender and delivery
of said assets."

In accordance with the reasoning of the Phillips
and Holloway cases and in view of the present definition
of "assets" in Section 1(c) of Article 21.07 of the Insurance
Code, we conclude that the receiver is entitled to any sums
deposited with the State Treasurer under the above articles.
This being the case, a general Court order placing a company
in receivership such as you transmitted to us with your re-
quest which directs the receiver to take possession of "any
statutory or special deposit made by or for the benefit of"
any insurance company "with any officer or agency of the
State of Texas" is sufficient authority for your department
to release any collateral so deposited.

It should be pointed out that by this opinion we
are not to be considered as determining the proper method
or forum to be utilized in requiring the Treasurer to turn
such deposits over to a receiver in the event of his refusal
to do so voluntarily.

## SUMMARY

The Commissioner of Insurance is not au-
thorized to delegate the discretionary
responsibility of approving securities
for deposit with the State Treasurer but
may delegate any purely ministerial acts
in connection therewith.

A general Court order placing an insurance company in receivership is sufficient authority for the Treasurer to release the securities deposited with him under Articles 3.15, 6.09, 8.05, 14.10 and 17.25, Section 4, of the Insurance Code.

Very truly yours,

WILL WILSON
Attorney General of Texas

By R. V. Loftin, Jr.
R. V. Loftin, Jr.
Assistant

RVL:ph

APPROVED:

OPINION COMMITTEE:

Geo. P. Blackburn, Chairman

Jack Goodman
Leonard Passmore

REVIEWED FOR THE ATTORNEY GENERAL
BY:
W. V. Geppert