Sherman B. Mosher, Plaintiff, *v.* The Supreme Sitting of the Order of the Iron Hall, Respondent.

William H. McDonald, Appellant, *v.* The Supreme Sitting of the Order of the Iron Hall, Respondent.

William H. McDonald, Appellant, *v.* Binghamton Trust Company, Receiver, etc., Respondent.

*Receiver — assets in his hands not subject to attachment — a judgment creditor, who has not a lien, stands on an equality with simple creditors.*

Where a temporary receiver of a foreign corporation, engaged in mutual benefit life insurance, has been appointed in the State of New York, and his receivership is subsequently merged in a permanent receivership, there is no point of time when the lien of an attachment, procured subsequently to the appointment of the temporary receiver by a certificate holder who has recovered judgment against the corporation, can attach to the funds of the corporation.

Whether or not the temporary receiver has taken actual possession of all the assets of a corporation at the time when an attachment is issued, the property of the corporation must be deemed to be in the custody of the law at all times after his appointment, and, therefore, cannot be attached.

Unless a judgment creditor of a corporation for which a receiver has been appointed has acquired a statutory lien upon its assets prior to the appointment of the receiver, he is not entitled to a preference over other creditors, and his rights as creditor must be worked out through the receivership.

Appeal by William H. McDonald, the plaintiff in the action secondly above entitled, from an order of the Supreme Court, entered

in the office of the clerk of the county of Broome on the 24th day of July, 1894, denying his motion to compel the Binghamton Trust Company, permanent receiver of The Supreme Sitting of the Order of the Iron Hall, to pay a judgment recovered against it by him in said action.

The first above-entitled action is the one in which the permanent receiver was appointed.

*Roger P. Clark* and *Edward K. Clark*, for the appellant.

*Edmund O'Connor* and *Taylor L. Arms*, for the respondent.

MERWIN, J.:

The defendant, " The Supreme Sitting of the Order of the Iron Hall," is a foreign corporation, duly incorporated in 1881 under the laws of the State of Indiana, and having its legal location at Indianapolis in that State. It was in the nature of a mutual and co-operative association, and its object, as stated in its articles of association, was to improve the condition of its membership morally, socially and materially, establish a " benefit fund from which members of the said order, who have complied with all its rules and regulations, or the heirs of such members, may receive a benefit in a sum not exceeding one thousand dollars ($1,000), which shall be paid in such sums and at such times as may be provided by the laws governing such payment, or in the certificate of membership, and when all the conditions regulating such payments have been complied with ; " also to establish a life fund from which, under certain conditions, a sum not exceeding $3,000 should be paid upon the death of a member who had been duly admitted to membership in that fund. Benefit certificates were provided for, calling for the payment of a specific sum out of the benefit fund after a continuous membership of seven years. Provision was made for the organization of branches and the issuance to them of charters. The revenue of the supreme body was derived " from charter and registration fees, profits on the sale of paraphernalia and supplies, and from such per capita tax as may be levied at each regular session of this body or at a special session called for the purpose." The benefit fund was apparently made up from assessments. Each branch was to attend to the collection of the assessments on its members, and retain in its hands as a reserve

fund twenty per cent thereof, of which it had the supervision and management although it belonged in fact to the corporation.

On the 17th day of August, 1885, a benefit certificate was issued to William H. McDonald in the sum of $1,000, payable on the 17th of August, 1892, less such sums as may have been previously advanced, and at that date McDonald claimed there was due thereon the sum of $500. He thereupon commenced in the Supreme Court an action against the corporation for the recovery of that amount, and on the twenty-seventh of August obtained in due form an attachment against the property of the defendant on the ground that it was a foreign corporation. This, at its date, was delivered to the sheriff of Broome county, and he, on the thirty-first of August, in form levied on certain moneys on deposit in the Binghamton Savings Bank to the credit of one of the branch orders of the corporation, and on the 1st of September, 1892, on moneys deposited in like manner in the Chenango Valley Savings Bank. These levies were made by leaving with each bank a certified copy of the attachment and a notice as required by law. The defendant corporation appeared in the action and answered, among other things denying its liability. The case was brought to trial, and upon the decision therein in favor of the plaintiff for the sum of $500 and interest from August 17, 1892, a judgment was entered on the 20th of February, 1894, against the defendant therein for the sum of $690.71, damages and costs. Upon this judgment an execution was issued, and the plaintiff therein and the sheriff are now trying to reach the deposits upon which it is claimed the attachment was levied, and which were, on the 19th of July, 1893, paid over by the respective banks to the Binghamton Trust Company as receiver of the corporation defendant. This payment was subject to any lien that in fact existed under or by virtue of the attachment.

It appears that on the 23d day of August, 1892, in an action brought in the Superior Court of Marion county in the State of Indiana, by Albert B. Baker and others against the said The Supreme Sitting of the Order of the Iron Hall, for the purpose of dissolving the said corporation on the ground of insolvency and mismanagement and for the appointment of a receiver to take possession of its assets and distribute the same among the persons entitled thereto, an order and decree were made appointing James F.

Failey receiver of the corporation and directing him to take and hold all the property whether within or without the State which the defendant had at the time of the commencement of the action on the 29th of July, 1892, or had since acquired, and the defendant, its officers and all its subordinate branches were directed to deliver over to the receiver all the property and assets of the corporation, and to make, execute and acknowledge any transfer in writing which the receiver should deem necessary or proper to more effectually vest in him the property and effects of the corporation, and any disposition of any of the property by any member or branch except to the receiver was restrained. (See *Supreme Sitting of the Order of the Iron Hall* v. *Baker*, 134 Ind. 293.) Afterwards, and on the 2d of December, 1893, a final decree was made by the same court, continuing the receivership and making it permanent. It was adjudged that the corporation was at the commencement of the action insolvent, and was unable to carry on the business for which it was organized, and that its assets and property should be reduced to money and applied upon its debts and outstanding obligations and liabilities.

On the 26th day of August, 1892, in an action brought in the Supreme Court in the city and county of New York by Moses K. Glines against the said corporation, an order was made at Special Term appointing George E. Glines temporary receiver of the assets and property of the defendant. This was made upon the summons and complaint in the action and affidavits and order to show cause, all of which were served on defendant by service on one Cooper, who was shown to be the deputy supreme justice of the defendant and one of its managing agents. Mismanagement and insolvency were alleged as the basis of the action. It was brought by the plaintiff therein, who was a member of the order, in his own behalf and in behalf of all members of the order residents of the State, the number of whom was large, and its object was to protect the rights of the members within this State, and in that view obtain the appointment of a receiver of all the property and assets within this State, to hold and distribute the same, subject to the order of the court, among the said members. The order appointing the receiver directed him to take possession of all the property and assets of the defendant, collect and receive all moneys due it, and assume full

control of the assets with all the usual powers of receivers in like cases. The receiver duly qualified as such and filed his bond on August 27, 1892, and entered on the discharge of his duties.

On the 24th day of August, 1892, an action was commenced in the Supreme Court in the county of Broome by Sherman B. Mosher against the said corporation for substantially the same purpose as the action of Glines above referred to. The summons, complaint, notice of motion for the appointment of a receiver and affidavit were on that day served on the defendant by serving at Binghamton on a trustee of defendant residing in this State. An injunction pending the motion was granted on August 25, 1892, and on the same day similarly served on defendant. In pursuance of the motion at Special Term on September 9, 1892, the Binghamton Trust Company was appointed temporary receiver of the defendant, with power to receive and collect all the property and assets of the corporation within this State at the time of making the motion for a receiver on the 25th of August, 1892, or since acquired, and hold the same under the order and direction of the court. The question whether the receivership should be ancillary to the receivership in Indiana was reserved for future order. In this action the defendant appeared and answered, a trial was had, and on the 2d of November, 1892, a final judgment was entered, continuing the receivership and making the temporary receiver permanent with the usual powers. A question arose as to the status of the temporary receivership of George E. Glines, and it was held (*Glines* v. *The Binghamton Trust Co*, 68 Hun, 511) that it was superseded by the permanent receivership. Accordingly Glines, in June, 1893, in pursuance of an order of the court, duly accounted and paid over to the Binghamton Trust Company as the permanent receiver, since which time the trust company has continued to discharge the duties of permanent receiver.

It will be observed that the receivership of Glines was prior in time to the McDonald attachment. This priority existed, although Glines as receiver may not have taken actual possession of all the assets. (Beach on Receivers, § 207.) By operation of the receivership the property was in custody of the law, and in such case the rule is that the property cannot be attached. (Drake on Attachment [7th ed.], § 251.) The court in which the receiver was

appointed might, perhaps, have given leave to levy the attachment (*Webster* v. *Lawrence*, 47 Hun, 565), but that was not done. The receiver, as the hand of the court, kept the legal custody until it vested in the permanent receivership. There was no point of time at which the lien of the attachment could attach. The property all the time was in the custody of the law. The Glines receivership was not abandoned, but it was asserted until it was absorbed by the permanent receivership.

But it is claimed that the appointment of Glines was void for want of jurisdiction. A motion at Special Term to vacate the order of appointment on the ground that the defendant was not properly served with process was denied. (*Glines* v. *Supreme Sitting of Order of Iron Hall*, 20 N. Y. Supp. 275; affd. at General Term, 21 id. 543.) In *Glines* v. *Binghamton Trust Co.* (*supra*) the General Term were evidently of the opinion that the appointment was authorized by section 713 of the Code. In some cases it has been held that a court of equity has inherent power to appoint a receiver of property of corporations in order to preserve it for the benefit of the parties in interest and to abide the direction of the court. (Beach on Receivers, §§ 404, 405.) A distinction is made between a receiver of the property and a receiver of the corporation. Be that as it may, we are of the opinion that the view of the court in *Glines* v. *Bing. Trust Co.* (*supra*) should be followed here, and that the appointment of the temporary receiver was valid, so far as the present proceeding is concerned. It follows that the appellant had no lien by virtue of his attachment.

It is further claimed by the appellant that by virtue of his judgment he has an established debt against the corporation (*Pringle* v. *Woolworth*, 90 N. Y. 502) and is entitled to have it paid out of assets in this State. If there was a lien by virtue of the attachment that might be so. (*Willitts* v. *Waite*, 25 N. Y. 577; *Barth* v. *Backus*, 140 id. 235.) But in the absence of a lien the rights of a creditor must be worked out through the operation of the receivership.

In the papers before us there is a stipulation that at the hearing of the motion upon which the order appealed from was made, "an order was made, upon the petition of the local branches of defendant in the State of New York, in the action of Sherman B. Mosher, for

the Binghamton Trust Company, acting as receiver, to turn over to James F. Failey, the Indianapolis receiver, the funds of the defendant in the hands of said trust company, except, and it was then ordered that said trust company retain sufficient funds to pay the above-named judgment creditors in case they ultimately succeed in their motions to compel or obtain payment of their claims out of the funds attached in their above-entitled actions." The judgment creditors referred to in the stipulation are McDonald and two others similarly situated. The order referred to is not appealed from, and its propriety is not for us here to determine. It is stated in the appellant's points that the transfer has been made as provided in the order. The stipulation seems to indicate that the claim of the judgment creditors was based solely on their attachments. Assuming that the appellant has a debt payable in preference to the claims of members upon benefit certificates not matured, it is not shown that the fund in this State was sufficient to pay in full all similar claims in this State. Nor is any basis presented from which it can be determined how much they should receive. It is not clear that the maturity of the appellant's certificate on the 19th of August, 1892, gave him a preference over certificates not then matured. Clearly the corporation was then insolvent. All the members having certificates had contributed to the benefit fund, and as a general rule such a fund will be distributed *pro rata* among those who contributed in proportion to the amounts respectively paid in. (2 Bacon on Ben. Soc. § 479a.) This question, however, need not be passed upon here. We must here assume that in the order of transfer above referred to the rights of all parties were properly protected. The court no doubt in a proper case would have power to make such an order (*Buswell* v. *Order of the Iron Hall*, 161 Mass. 224 ; Bacon on Ben. Soc., *supra*), and we must assume that it was properly made.

We find no good reason for disturbing the order appealed from and it should be affirmed.

HARDIN, P. J. and MARTIN, J., concurred.

Order affirmed, with ten dollars costs and disbursements.