(41 App. Div. 257.)

PEOPLE v. GRANITE STATE PROVIDENT ASS'N et al.

(Supreme Court, Appellate Division, Second Department. June 6, 1899.)

1. FOREIGN CORPORATIONS—CONSTITUTIONAL LAW—DEPOSIT TO SECURE CREDITORS.

A law requiring a deposit by a foreign corporation doing business in the state of funds to secure claims of citizens of the state does not infringe the constitutional guaranty that citizens of each state shall have all the privileges and immunities of citizens in the several states.

2. SAME—DEPOSIT TO SECURE CREDITORS.

Banking Law, § 14, requiring foreign corporations to deposit securities, to be held in trust as security for depositors and creditors, and section 33, providing that, if it be made to appear that the deposit is insufficient to secure creditors and shareholders residing in the state, a receiver shall be appointed to distribute the funds among such resident creditors and shareholders in the manner prescribed in case of voluntary dissolution of a corporation, constitute such creditors and shareholders the sole beneficiaries of the deposit to the exclusion of nonresidents; and this, though the corporation had no right to prefer resident shareholders by such deposit.

3. SAME—GENERAL ASSETS.

There being sufficient assets to pay creditors in full, the resident creditors should not be forced to first resort to the deposit before looking to the general assets of the corporation, since this would operate to deprive the resident shareholders of the protection the statute gives them by allowing them to participate in the deposit.

4. SAME—RECEIVERS—COLLECTION OF ASSETS—JURISDICTION OF COURT.

Where a foreign receiver of a foreign corporation sends mortgages on land in the state to a domestic receiver, without condition or agreement, for collection, the courts of the state have jurisdiction of the proceeds.

5. SAME—ASSETS—DISTRIBUTION.

A state may, by its courts, retain within its limits the assets of a foreign corporation, that justice may be done its own citizens; but, where creditors and assets are scattered throughout a great many states, the assets should be turned over to the home receiver, on his giving security to pay the residents of the state the same dividends as may be awarded other creditors, so that hardships and confusion may be avoided.

Appeal from special term, Kings county.

Suit by the people of the state of New York against the Granite State Provident Association and David A. Taggart, assignee. There was a decree for plaintiffs, and defendant Taggart appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

J. Newton Fiero, for appellant.

George M. Mackellar (Clarence Lexow, on the brief), for respondent Dickinson.

John C. Davies, Atty. Gen., for the People.

CULLEN, J.  The defendant the Granite State Provident Association is a loan and building company incorporated under the laws of the state of New Hampshire.  For the purpose of enabling it to do business in this state under the provisions of the banking law, the association, about July 1, 1892, deposited with the superintendent of banking of this state the sum of $100,000, for the protection of the creditors and depositors of the corporation.  From the time of such deposit and the receipt of a certificate from the superintendent, the association continued to do business in this state until about the 13th day of March, 1896.  At that date the bank commissioners of the state of New Hampshire certified to the supreme court of that state that, from an examination of the affairs of the association, it was adjudged by them to be necessary for the public safety that the corporation should not continue to transact business, and prayed that the court might appoint a receiver of the property and effects of the association.  On this application the New Hampshire court appointed the defendant Taggart assignee of the property and effects of the corporation.  On March 24, 1896, the attorney general brought this action in the name of the people of the state of New York against the defendant association.  In the complaint is set out the deposit by the association with the banking department of this state; the proceedings taken against the corporation in the state of New Hampshire; that the association had violated the laws of this state governing the conduct and management of its business, and that such conduct was illegal and unsafe; and that there were a number of stockholders and depositors and members of the association resident within this state.  The plaintiff prayed for judgment that the property and assets of the corporation in this state be sequestrated, to the end that an equitable distribution of the securities or assets might be made among the persons entitled thereto, and that for this purpose a receiver of the property and effects be appointed.  Thereafter Edwin E. Dickinson was appointed receiver of the property of the association within this state, and also receiver of the securities deposited by the association with the banking department.  On his own application, Mr. Taggart, the New Hampshire assignee, was made a party defendant to the action, and answered.  The action was brought on for trial, and judgment entered continuing the receiverships and providing for the distribution of the funds.  From that

judgment this appeal is taken by Mr. Taggart, the New Hampshire assignee.

No point is made as to the propriety and necessity of sequestrating the assets of the corporation within this state. The questions presented on this appeal are—First, as to the rights of the creditors and stockholders within this state to the funds in court; and, second, whether the fund should be administered by the courts of this state, or sent to the New Hampshire court for distribution. At the time of the institution of the proceedings against the association, in addition to the securities deposited with the banking department, the corporation held a number of mortgages on real property within this state, and owned in fee some real property that it had been compelled to take in on foreclosure. By authority of the supreme court of New Hampshire, the assignee sent to the receiver appointed in this state the various mortgages referred to. The receiver proceeded to collect such securities and convert the real estate. At the time of the trial of the action the receiver held two funds,—one, the general assets of the corporation collected within this state, which amounted approximately to the sum of $69,000; the other, the special fund, the $100,000 in securities deposited with the banking department. There were alleged creditors residing within this state, whose claims amounted to over $116,000, and resident stockholders, the book value of whose stock exceeded $200,000. The judgment of the special term, in substance, directed the receiver to first pay out of the general fund to the creditors resident in this state such percentage of their claims as should be declared and paid by the New Hampshire assignee to creditors throughout the country generally; if the general fund should be insufficient to pay the creditors in this state such percentage, then the receiver should distribute such fund among such creditors ratably; if the general fund should be more than sufficient to pay the creditors in this state the percentage paid by the New Hampshire assignee, then the receiver should pay any surplus to the New Hampshire assignee that might be necessary to place creditors throughout the country generally on the same footing as those residing within this state; that, should there be a surplus after the payment of the debts, the receiver was directed to apply such surplus to the stockholders resident in this state, on substantially the same principles as have been detailed with reference to creditors. The directions as to the administration of the special fund or deposit were that it was first to be applied to the payment in full of creditors resident in this state, in case the general fund was insufficient to discharge their claims; that, after the satisfaction of the claims of resident creditors, then the balance should be distributed among the resident shareholders or stockholders, to the full amount of their claims; and that any surplus that might remain should be transmitted to the New Hampshire assignee.

In Blake v. McClung, 172 U. S. 239, 19 Sup. Ct. 165, the supreme court of the United States held that it was not within the power of a state to give its citizens or residents any preference in the administration of the assets of an insolvent or defunct foreign corporation doing business within its territory. In the opinion of the court, de-

livered by Mr. Justice Harlan, it is conceded that a deposit of funds or property in trust to secure the claims of citizens of the state is valid, and does not infringe the provision of the federal constitution that citizens of each state shall be entitled to all the privileges and immunities of citizens in the several states. On the correctness of this proposition both the majority and minority of the court concurred. We may therefore assume that the question is settled. It was also conceded in the Blake Case that a state may, "by its courts, retain within its limits the assets of a foreign corporation, in order that justice may be done to its own citizens." The only question, therefore, that we are called to pass upon in relation to the special deposit in this state, is the interpretation of the statutes in compliance with which it was deposited; for, if by those provisions a special security is given in favor of resident creditors and stockholders, of that preference residents within this state have a right to avail themselves. Section 14 of the banking law requires every foreign corporation doing business within this state to deposit with the banking department securities to a specified amount, which "shall be held by the superintendent, in trust, as security for the depositors with and the creditors of such corporation." Laws 1892, c. 689. This section, by itself, would give no preference to domestic creditors over nonresidents, but by section 33 of the same statute it is provided:

"If it is made to appear upon application of any creditor or shareholder in any such corporation, company or association, residing in this state, that the funds on deposit with the superintendent of banks are insufficient to pay in full the creditors and shareholders residing in this state," the court shall appoint a receiver of such funds; "and the receiver shall distribute such funds among the creditors and shareholders of the corporation, company or association residing in this state in the manner prescribed by law for the payment of creditors in the case of voluntary dissolution of a corporation."

We think the effect of this last section is to constitute the shareholders and creditors resident within this state the sole beneficiaries of this trust fund, to the exclusion of nonresidents.

It is urged by the learned counsel for the appellant that by the contract of incorporation in New Hampshire the rights of all the several shareholders were equal, and that the corporation had no right to deposit its property or funds in this state upon a trust which gave the shareholders resident within the state greater rights than others. But no foreign corporation, with the exception of those engaged in interstate commerce, and the like, has any right to do business within the limits of a state, except by the consent of that state. Crutcher v. Kentucky, 141 U. S. 47, 11 Sup. Ct. 851. It was a condition precedent to the defendant association carrying on business within the state of New York that it should make the necessary deposit for the security of shareholders resident in this state. If the creation of this special trust in favor of New York shareholders was a breach of trust on the part of the corporation to its other shareholders, those shareholders should have intervened promptly, and either restrained the association from depositing the securities, or compelled it to go out of business here and withdraw the securities already deposited. The corpo-

ration cannot take advantage of the privilege granted by the state of New York to do business within its limits, and then repudiate the conditions on which such permission was granted; and the estoppel works equally on the stockholders who for years acquiesced in the action and conduct of the corporation. The case is in all respects similar to that of Kent v. Mining Co., 78 N. Y. 159. There a corporation, being in financial straits, altered the stock of such shareholders as should pay in five dollars a share to preferred stock. The original articles of association provided for but one kind of stock. It was held that there was no authority in the corporation to create the preferred stock, so as to bind dissenting stockholders; but it was also held that the other stockholders, having for years taken no steps to avoid the action of the corporation, had assented to it, and were estopped from thereafter questioning the validity of the preference. Nor do we see any force in the further claim of counsel for the appellant that by the terms of the subscription of the shareholders in this state they waived the securities and converted them by the deposit with the banking department. There is certainly no express waiver in the instrument, and we think none should be implied, for that would defeat the policy of the state.

It is urged by the learned counsel for the appellant that, in construing both the statute and the subscription applications, equity requires that we should adopt the construction which works equality among the whole body of creditors and shareholders. We do not assent to this view. State statutes which require the deposit of security by foreign corporations for the protection of the citizens of the state in which it seeks to enter for business are not necessarily the offspring of state jealousy. The extent of this country is so great, and the domicile of a corporation may be so far from the locality in which it is doing business, that to compel a creditor or shareholder in a corporation to resort to the domicile of the corporation for the collection of his claim would often be substantial denial of justice. While to persons engaged in large commercial enterprises it may be easy to collect a claim from a distant debtor, to the great mass of holders of policies of insurance and shares in building associations, and the like, the difficulties of resorting to judicial tribunals in distant states would seem so great that they would be induced either to abandon their claims, if small, or dispose of them at a sacrifice. Litigation or other business transacted at a distance is apt to be much more expensive, and not as well cared for as that at home. It is also to be borne in mind that public policy, with reference to the privileges given to corporations, the powers of their officers, the liability of their members to creditors, the regulations for public reports of the conduct of the business and the state of the property, differ very much in different states. In some states the restrictions placed on corporations or their officers in these respects are limited, and it is thought wiser to allow creditors and persons investing in a corporation to scrutinize and determine its condition for themselves, while in others the regulations concerning corpo-

rations are strict, and many safeguards are enacted for the security of creditors or people dealing with corporations. It is not necessary to discuss the question which policy is preferable. The public policy of this state would probably be considered as belonging to the latter class, since, in fact, so stringent are its regulations deemed that at the present time a majority of ordinary business corporations, though the enterprises are to be carried on wholly within this state, are incorporated under the laws of other states. It would be absurd for the state of New York to suffer foreign corporations to enter the state and do business therein on better terms than it extends to domestic corporations, whether those terms are reasonable or not. We think it the duty of the courts of each state to carry out the spirit of the legislation of the state in these matters, when the legislation infringes no constitutional right. As we construe those statutory provisions, their effect is substantially the same as that of the statute of Wisconsin, which was before the courts of that state in Lewis v. Association, 98 Wis. 203, 73 N. W. 793. It was there held:

"The deposit was required and made in pursuance of a wise state policy, solely for the benefit and indemnity of resident shareholders and creditors, and for their protection and advantage only."

The appellant contends that the decree should have directed the resident creditors and depositors to first resort to the special or deposit fund for the satisfaction of their claims, before seeking the general fund. The equities of all the creditors of the association, whether resident within the state or not, are superior to those of the shareholders. Therefore, were there any probability that all the creditors might not be paid in full, we think that the resident creditors should first go to the special deposit, though that course would deplete, if not entirely absorb, the fund, at the expense of the resident shareholders. But it is conceded by the appellant that the general assets will more than pay the creditors of the association in full. A resort by the resident creditors to the special deposit would therefore only operate to deprive the resident stockholders of the preference given them by the statute in the security deposited under it. The case in this respect seems to fall within that of People v. E. Remington & Sons, 121 N. Y. 328, 24 N. E. 793, where it was held that a creditor (and the principle seems equally applicable to a shareholder), having security for his claim, is entitled to prove the claim against the general estate for its full amount, without regard to the security which he holds.

We now reach the provisions of the decree relating to the disposition of the fund arising from the collection of the general assets of the association, or the "general fund," as it has been called. We have no doubt of the jurisdiction of the court over this fund, and the power to distribute it, if the court sees fit. Such right in the state courts is expressly conceded in the opinion in Blake v. McClung, supra. Nor have we any doubt that the property from which this fund has proceeded was assets within this state. A portion of the property was real estate situate within the state, and, of course, as to such property, there can be no question as to its situs. The

remainder of the property consisted of mortgages on New York real estate. Though the instruments were held in New Hampshire, the debts were owed by residents of this state. And while mortgages are now deemed to carry no estate in the land, but create merely liens thereon, still they are always subject to the state in which the land is situate. So it was held in Savings & Loan Soc. v. Multnomah Co., 169 U. S. 421, 18 Sup. Ct. 392, that a state could tax mortgages of lands within its territory, as against nonresident mortgagees and citizens of other states. Be this as it may, the securities were sent to the receiver in this state without condition or agreement. They have been in his possession, and he has collected them. If there has been at any time doubt as to the jurisdiction of the courts of this state over these securities, the question was settled when the securities were delivered to the receiver.

But, though it is within the power of the courts in this state to administer the estate of the association, the propriety of exercising that power, instead of sending the assets to the domicile of the association for distribution, presents a very different question. This case was tried and decided by the special term before the decision of the supreme court of the United States in the Blake Case. But, though not having the advantage of that decision, the learned judge recognized the injustice of the claim that the general assets of the association were to be appropriated to the exclusive advantage of resident creditors, and refused to uphold such a rule. The decree gives to the resident creditors and shareholders only such percentage of their claims from the general assets as may be declared by the assignee of the domicile to creditors and shareholders throughout the country. The surplus after the payment to the resident claimants, the decree directs, shall be turned over to the New Hampshire assignee. Though the court, in the Blake Case, asserted the right of the courts of a state to so administer the assets of a corporation within that state as to secure justice to its own citizens, we are not entirely certain that, when the courts of a state assume to administer such assets, they can deny to the citizens of other states their right to share in the assets, if they enter the state and make proof of their claims. In the case before us there is nothing to show that any discrimination in the distribution of assets has been made by the courts of other states against the citizens of this state. If, as said by Judge Harlan in the Blake Case, the right of a citizen of one state to sue in the courts of another state is one of the rights guarantied by the federal constitution, there would seem to be force in the claim that a creditor of this association from any part of the United States might come here and assert his right to share in the assets of his debtor. But, if we assume that the decree of the special term is not obnoxious to the constitution in the respect suggested, still a separate distribution of the assets of the association within this state seems to us to involve great confusion and hardship. The evidence shows that there are creditors or shareholders of the association in 37 states or territories. If the courts of each state are to impound the assets in that state, and make a separate distribution thereof among the citizens of the state, a general ad-

ministration among creditors or shareholders, though not theoretically impossible, would seem difficult, to the point of being impracticable. No dividend can be declared by the courts of the domicile without accurate knowledge of the assets in each separate state, the expenses of the administration therein, and the amount of claims that may be proved against the estate. There is no method by which the receiver in one state can be compelled to account to the receiver or assignee in another. The courts in any state may open or extend the time for proving claims against the estate, thus destroying the accuracy of the computation of any dividend that may have been previously declared. There may be creditors in a state in which there are no assets. The claims of such creditors would be postponed until after payment of all the creditors in those states where there were assets. The difficulty of such separate administrations has been considered by the supreme court of Massachusetts in the case of Buswell v. Fuller, 161 Mass. 220, 36 N. E. 753, where the court directed that the assets should be remitted to the domicile of the corporation. In Re Waite, 99 N. Y. 433, 2 N. E. 440, the conflicting decisions in this state on the effect of the appointment of foreign assignees or receivers were most elaborately reviewed; and it was determined that on the ground of comity, which is said to be a part of the common law, the title of foreign statutory assignees would be recognized and enforced here, when they could be without injustice to our own citizens and without prejudice to the rights of creditors. In the present case no creditor has obtained a specific lien upon any of the general assets by attachment or levy. The only right of claimants who are citizens of this state is to share in the general assets of the insolvent corporation equally with other creditors. That right may be entirely protected by requiring the assignee to give a bond to pay the citizens of this state the same dividend on their claims as may be awarded to other creditors. If it be urged that the retention of the fund here is the best security for our citizens, we think it will be attained at too great an expense to other creditors of the association, and possibly even to our own claimants; for, in our opinion, it will probably result in postponing any distribution of the assets of this association to a very distant time. We do not attempt to lay down any general rule that the assets of a foreign corporation must be remitted to the domicile for administration. It may well be that in the case of a foreign corporation, whose business is wholly local and within this state, we ought here to make the distribution among creditors, but we are clear that in this case the proper course is to transmit the general assets to the domicile of the association for distribution. This has been the practice adopted with reference to this association wherever the question has arisen in other states, so far as any decisions have been called to our attention. Irwin v. Association (N. J. Ch.) 38 Atl. 680; Smith v. Taggart, 30 C. C. A. 563, 87 Fed. 94; Maynard v. Association, 92 Fed. 435.

The judgment appealed from should be modified by directing that the general fund or assets in the hands of the receiver be

turned over to the defendant Taggart, assignee, upon his giving a bond, with sufficient sureties, conditioned for the payment to each creditor or shareholder resident in the state of New York the same dividend on his claim that may be awarded other shareholders or creditors, without any deduction on account of any sum he may receive from the special fund deposited in this state, and that in default of such payment he will, on the order of the court, return to the receiver in this state the fund so turned over to him; and as thus modified the decree of the special term should be affirmed, without costs. All concur.