of its bearing upon the willful intent of the defendant in making the statement of the result of the canvass.

The judgment should, therefore, be reversed and a new trial granted.

Clarke, P. J., Dowling and Page, JJ., concur.

Judgment reversed and new trial granted. Settle order on notice.

---

William B. Mitchell, in Behalf of Himself and Other Creditors of Banco de Londres y Mexico, Similarly Situated, Appellant, *v*. Banco de Londres y Mexico, Defendant, Impleaded with Alfredo Caturegli, as Attorney and Representative of the Comision Monetaria of the Republic of Mexico, and the Bank of Montreal, Respondents.

First Department, July 2, 1920.

Corporations — foreign corporation — right of general creditor to apply for receiver of assets of insolvent foreign corporation — action by receiver of foreign corporation to recover funds deposited in this State — right of general creditor to have proceeding restrained — receiver of Mexican banking corporation appointed by chief executive of Mexico — jurisdiction of courts of this State — complaint examined — receiver of assets of insolvent foreign banking corporation on deposit with solvent banking company in this State refused.

The courts of this State may appoint a receiver of the assets of an insolvent foreign corporation which are located in this State so that they may be equitably distributed among the lawful claimants thereto.

A general creditor of a foreign insolvent corporation which is in the hands of a receiver or liquidator appointed in a foreign State may institute proceedings in this State in behalf of himself and other creditors similarly situated, to have a receiver appointed of the assets of the foreign corporation located here.

Where a corporation is insolvent and in the hands of a receiver or liquidator appointed in a foreign State, a creditor in this State, whether his claim is reduced to judgment or not, must recognize the insolvency proceeding in the foreign State, and he can gain no preference over any other creditors of the corporation upon the assets of the insolvent corporation which may be located in this State.

Where the liquidator or receiver of a banking corporation of Mexico has instituted proceedings in this State to recover moneys deposited in this State, in a branch of a Canadian bank, a general creditor of said Mexican corporation resident in this State has no adequate remedy at law, and may maintain proceedings to restrain the prosecution of said action and for the appointment of a receiver of the assets.

The fact that the liquidator or receiver of the banking corporation of Mexico was appointed by the chief executive officer of Mexico, under the peculiar laws of that country, instead of by a court of the Republic, does not make the government of Mexico an owner of the funds of the bank, and it was not, therefore, an owner of the funds deposited in the bank in this State.

The defendant receiver or liquidator of the Mexican banking corporation, appointed under the laws of his government, having sought the jurisdiction of the courts of this State to collect the moneys on deposit in this State, stands in the same position as any other suitor, and having submitted himself voluntarily to the jurisdiction of our courts, his rights become subject to a consideration of claims which other parties may have in the funds which are the subject-matter of the action.

Complaint in an action by a general creditor of a Mexican banking corporation suing in behalf of himself and other creditors similarly situated, to restrain the receiver or liquidator of said corporation appointed in Mexico from prosecuting an action to recover moneys of such corporation deposited in a bank in this State, and for the appointment of a receiver of the assets of said foreign corporation located in this State examined, and *held*, to state a cause of action.

The plaintiff is entitled to injunctive relief restraining the prosecution of the action by the defendant receiver or liquidator of the Mexican banking corporation.

Inasmuch as the assets of said foreign banking corporation in this State are in the possession of a bank, which is presumably abundantly solvent for the protection of the rights of the various claimants, and such possession is fortified by an appropriate injunctive order, the appointment of a receiver is not necessary.

APPEAL by the plaintiff, William B. Mitchell, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 18th day of December, 1919, upon the decision of the court, rendered at the New York Special Term, dismissing the complaint, and also from an order entered in said clerk's office on the 30th day of August, 1919, denying plaintiff's motion for a judgment on the pleadings, and also from orders entered in said clerk's office on the 8th and 9th days of December, 1919, granting defendants' motion for judgment on

the pleadings, and also from an order entered in said clerk's office on the 27th day of June, 1919, denying plaintiff's motion for a preliminary injunction and a receiver.

On stipulation of the parties, the separate appeals taken from the order denying plaintiff's motion for a preliminary injunction and for a receiver, and from the order denying plaintiff's motion for judgment on the pleadings were withdrawn and said appeals consolidated with the appeal from the final judgment.

*Gustavus A. Rogers* of counsel [*Harry Rotkowitz* with him on the brief], *Rogers & Rogers,* attorneys, for the appellant.

*Jerome S. Hess* of counsel [*Harold B. Elgar* with him on the brief], *Hardin & Hess,* attorneys, for the respondent Alfredo Caturegli.

*George S. Hornblower* of counsel [*Mark W. Potter* with him on the brief], *Hornblower, Miller, Garrison & Potter,* attorneys, for the respondent Bank of Montreal.

GREENBAUM, J.:

The underlying question in the disposition of all the motions which are here to be considered is, whether the objections to the complaint are well taken. These objections are, that the plaintiff has not legal capacity to sue; that the court has no jurisdiction of the defendant Caturegli, nor of the subject-matter of the action; that the plaintiff has adequate relief at law, and, finally, that the complaint does not state facts sufficient to constitute a cause of action.

The action is brought by William B. Mitchell, in behalf of himself and other creditors of the Banco de Londres y Mexico, similarly situated, against the Banco de Londres y Mexico, Alfredo Caturegli, as attorney and representative of the Comision Monetaria of the Republic of Mexico, and the Bank of Montreal. The action was commenced by the service upon the defendant Bank of Montreal and Caturegli of the summons and complaint, together with the notice of motion upon annexed affidavits for a preliminary injunction and the appointment of a receiver *pendente lite.*

The complaint is very voluminous and contains many

allegations which relate to alleged acts of illegality, violence and tyranny on the part of the Mexican government during the years 1916 and 1917 with respect to the affairs of the Banco de Londres y Mexico, with which the courts of our country under international law can have no concern and which may not be considered in determining the rights of the parties to this action. The facts alleged in the complaint, which must be deemed admitted by the demurrers of both defendants, will be briefly summarized.

The plaintiff is a resident of this State and a creditor of the Banco de Londres y Mexico to the extent of a claim of $20,777.55, which has been formally acknowledged by the board of directors of the said bank by resolution. The defendant Bank of Montreal is a corporation of the Dominion of Canada which has an office for the transaction of its business in this State, and which holds on deposit approximately the sum of $140,000 to the credit of the defendant Mexican bank. The defendant Caturegli is a representative in this country of what is known as the Comision Monetaria of Mexico, and occupies a position somewhat akin to that of a liquidator under our Banking Acts. The defendant Banco de Londres y Mexico is a bank of issue duly organized under the laws of the Republic of Mexico in the year 1889, which had actively functioned as such bank until about September, 1916. About that time Venustiano Carranza, as First Chief of the Constitutional Army of Mexico, decreed the abrogation of all the banking laws of Mexico and of all the charters of banks of issue. The decree also provided: " That every bank of issue should within sixty days from the date of the decree, increase its metallic reserve to an amount equal to its bills in circulation," and that the banks may carry on executive operations only as authorized by the Department of Finance of Mexico. It is alleged that the object of this decree was to conserve the interests of the banks. It is also alleged that for the purpose of making the decree effective, provision was made " for the appointment of a Board of Sequestration for each bank of issue, to act as a conservation commission and to liquidate the bank if it did not maintain its metallic reserve under the provisions of the decree." Subsequently a further decree was issued by Carranza, which designated a Comision

Monetaria for the purpose of reorganizing the circulation of .coin in the United States of Mexico. In or about the month of December, 1916, the Board of Sequestration, in ostensible compliance with the decree of the First Chief, took possession of the defendant Bank of Mexico by armed force. In or about .April, 1917, the Board of Sequestration was supplanted by the Comision Monetaria, which has since held and still holds physical possession of the property and assets of the Bank of Mexico.

There are allegations in the complaint as to the alleged illegality of the governmental acts and the protest of the bank officials thereto and that the Mexican Bank was taken possession of by the Comision Monetaria; that the bank was solvent and financially able to liquidate its assets and pay its creditors in full, but that owing to the alleged acts of violence and threats made to the managers of the Mexican Bank and while under duress and fear of their lives, the officers of the bank delivered up to the Minister of Finance 825 silver bars of the value of $1,400,000, and eighty gold bars of the approximate value of $1,800,000, on the promise that there would be returned therefor to the bank the money coined therefrom, and that up to the 19th day of February, 1917, there was returned to the bank coinage of the value of approximately $500,000, leaving a deficit in this transaction of $2,700,000. There are also allegations of illegal and forcible extractions from the vaults of the bank of many millions of dollars of gold and that the purpose of the various decrees, although ostensibly to preserve the assets of the bank and to liquidate it for the benefit of the creditors of the bank, was to put the Mexican government in funds for the maintenance of armies in the field and to assure Carranza his position as political head of the government and for his own personal use and gain.

It is further alleged that by reason of the unlawful acts detailed, the Mexican Bank has become insolvent and unable to pay its liabilities; that before the institution of this action that bank deposited with the Bank of British North America approximately the sum of $140,000, and that the defendant Bank of Montreal has succeeded to all the rights of the Bank of British North America. It is also alleged that before the

institution of the present action the Comision Monetaria, by the defendant Caturegli, instituted an action in this court against the Bank of British North America, now the Bank of Montreal, the object of which was to obtain possession of the $140,000 and interest now on deposit with that bank and that if this action is successful it is intended to take the said money without the State and out of the territorial borders of the United States and to carry it into Mexico.

It is also alleged that there are other creditors of the Mexican Bank in this State and country, and that if the Comision Monetaria is permitted to prosecute this action and if it succeeds in obtaining possession of the said fund, it will be dissipated and unlawfully appropriated and will not be used for the purpose of satisfying claims of creditors and stockholders of the bank unless the equitable interposition of the court is exercised to protect the interest and rights of American creditors.

The prayer for relief is that the defendant Caturegli, as representative of the Comision Monetaria, be restrained from prosecuting the action against the Bank of Montreal brought to recover moneys on deposit belonging to the Bank of Mexico, and that the Bank of Montreal be enjoined from turning over these funds to Caturegli or to anybody else, and that a receiver be appointed by the court to preserve the money of the Bank of Mexico on deposit with the Bank of Montreal, and thereafter to deal therewith pursuant to the directions and order of this court pending a proper liquidation of the assets and property of the Bank of Mexico.

The first question that will be considered is that of the jurisdiction of this court. At the outset it is to be borne in mind that the plaintiff does not seek to appoint a receiver of the Mexican Bank, which is a foreign corporation, but merely to appoint a receiver of the assets of that corporation which are located in this State in order to bring about an ultimate equitable distribution of these assets in the foreign liquidation proceedings so far as the citizens of this State and of this country who have lawful claims against the Bank of Mexico are concerned. In other words, the plaintiff does not seek to obtain any advantage over any other creditor, and indeed he insists that he has no right so to do, for reasons

that will be presently considered. There is ample authority for the proposition that the court may appoint a receiver of the assets of a foreign corporation which are located in this State. It was so held in *Horton* v. *McNally Co.* (155 App. Div. 322). In *Popper* v. *Supreme Council* (61 App. Div. 405) the defendant, an Indiana corporation, which was a mutual benefit or fraternal association, became insolvent and was in the hands of a receiver appointed in Indiana. The plaintiff, a resident of this State, who was a member of the corporation, succeeded in having the funds of the corporation in this State put in the hands of a receiver so that they might be equitably distributed among the lawful claimants thereto. The court recognized the principle that the claimant had such an interest in the funds in liquidation as to entitle him to the relief sought, citing the following authorities: *Glines* v. *Supreme Sitting Order of Iron Hall* (20 N. Y. Supp. 275; affd., 21 id. 543); *Mosher* v. *Supreme Sitting of Iron Hall* (88 Hun, 394), and *People* v. *Granite State Provident Assn.* (41 App. Div. 257; affd., 161 N. Y. 492).

In *Glines* v. *Supreme Sitting Order of Iron Hall* (20 N. Y. Supp. 275, 277) the defendant, a benefit society incorporated under the laws of Indiana, was in the hands of a receiver appointed in that State and had local branches in the State of New York which had funds in their possession, the property of the corporation. It was held that a temporary receiver could be appointed to preserve these assets within this State upon the application of a member of the order, for the protection of members resident in this State. To the same effect are *Reusens* v. *Manufacturing & Selling Co.* (99 App. Div. 214); *Hallenborg* v. *Greene* (66 id. 590). That a general creditor may invoke such jurisdiction is also recognized in *Buckley* v. *Harrison* (10 Misc. Rep. 683).

The theory upon which a member may bring such a proceeding is that he has an interest in the assets of the insolvent corporation, just as creditors of an insolvent corporation would have, and that he is entitled to secure an equitable distribution of its assets among those legally entitled thereto.

In *Horton* v. *McNally Co.* (155 App. Div. 332) the court stated: " We think this court is committed to the doctrine that a receiver of the property of an insolvent foreign corpora-

tion situated in this State may be appointed to preserve the property *pendente lite* for the protection of the interests of New York creditors " (citing numerous authorities, including *People* v. *Granite State Provident Assn.*, 41 App. Div. 257; affd., 161 N. Y. 492).

The fallacy of the respondent's reasoning in insisting that the plaintiff has no standing unless he is a judgment creditor will be apparent upon slight reflection. The necessity of being a judgment creditor arises only in cases where, for example, a creditor seeks to set aside a fraudulent conveyance made by a debtor, which is an obstruction to the collection of his claim, through an execution issued under the judgment. In such a case, if successful, the judgment creditor may of course obtain a preference over other creditors. In a case however, where a corporation is insolvent and in the hands of a receiver or liquidator appointed in a foreign state, it has been repeatedly held that a creditor in this State, whether his claim is reduced to judgment or not, must recognize the insolvency proceedings in the foreign State and he can gain no preference over any other creditors of the corporation upon the assets of the insolvent corporation which may be located in this State. (*Martyne* v. *American Union Fire Ins. Co.*, 216 N. Y. 183; *Matter of French*, 181 App. Div. 719.)

It follows that the plaintiff has no adequate remedy at law, and it is clear that the court has jurisdiction in this action, which is properly maintainable unless the court has no jurisdiction over the defendant Caturegli, a representative of a foreign government.

The facts in this case show that Caturegli is the liquidator appointed under the laws of Mexico and may be regarded in the same light as a liquidator appointed under the Banking and Insurance Laws of this State. It is also to be borne in mind that the money in the Bank of Mexico is not the property of the sovereign government of Mexico. The circumstance that the receiver was appointed by the chief executive officer of Mexico under the peculiar laws of that country, instead of by a court of the Republic, does not make the government of Mexico an owner of the funds of the bank. If this proposition be sound, as I think it is, it follows that Caturegli, as liquidator, appointed under the laws of his

government, having sought the jurisdiction of this court to collect from the Bank of Montreal the moneys on deposit belonging to the Bank of Mexico, stands in the same position as any other suitor. Having submitted himself voluntarily to the jurisdiction of our court, his rights become subject to a consideration of claims which other parties may have in the funds which are the subject-matter of the action.

The respondent relies upon *Oetjen* v. *Central Leather Co.* (246 U. S. 297, 304) in support of the proposition that the courts of one independent government will not sit in judgment upon the validity of the acts which occurred in territory of another government. There can be no doubt as to the correctness of such a holding. The *Oetjen* case involved the title of property brought within the custody of a court in this country which had been appropriated in its own territory by the Mexican government during a state of revolution, by virtue of which it obtained title thereto. After the property which was the subject-matter of the action had been seized by the government of Mexico in its own territory, it sent the property to this country for the purpose of sale, so that it might obtain the proceeds therefrom. It was held that our courts could not question the validity of the acts of the foreign government with respect to matters which arose within its territory and pursuant to which it acquired title to the property in question. A similar situation existed in *Ricaud* v. *American Metal Co.* (246 U. S. 304). But these cases have not the slightest application to the facts appearing in this case, where the foreign government has no claim of ownership of the moneys on deposit in the Bank of Montreal belonging to the Bank of Mexico and in fact makes no such claim.

It is clear, therefore, that this case does not fall within any of the provisions of international law which would prevent this court from exercising jurisdiction over the defendant Caturegli. This question was considered in a leading case in England. In *Gladstone* v. *Musurus Bey* (1 H. & M. 495, 503) the court said: " It appears to me that the bank will be amply protected, because, if the Turkish Ambassador should present his cheque, the Bank, under the order of this Court, would decline to honour it; and the only mode in which the Ambassador could compel payment, would be by taking

some process of his own. I feel a very strong opinion, that, if he chose to take that course, the position of things would be entirely altered. He would be submitting himself to the jurisdiction of our tribunals; and in that case English tribunals would have the power of saying, for that purpose only, that they would administer justice between all parties concerned in a litigation which he had himself commenced." To the same effect is *Republic of Mexico* v. *Arrangois* (3 Abb. Pr. 470).

This court, therefore, has jurisdiction of the subject-matter of the action as well as of the parties. It seems to us that not only does the complaint set forth a cause of action, but that the plaintiff was entitled to injunctive relief restraining the prosecution of the action of Caturegli against the Montreal Bank.

As to the motion for a receiver, it may be said that the funds which are the subject-matter of this action are now in the possession of a bank, which is presumably abundantly solvent for the protection of the rights of the various claimants if fortified by an appropriate injunctive order although it may be necessary, in case the plaintiff succeeds in this action, to appoint a receiver in the final judgment to carry into effect the objects of this action as outlined to some extent in *Horton* v. *McNally Co.* (*supra,* 330).

In so far as the order appealed from denies the motion for a receiver, it is affirmed. All of the other orders and judgments appealed from should be reversed and the various motions made in behalf of the plaintiff should be granted, with costs to plaintiff.

CLARKE, P. J., LAUGHLIN, DOWLING and SMITH, JJ., concur.

Judgments of December 18, 1919, and orders of October 11 and 10, 1919, reversed and motions denied, with costs. Orders of August 30, 1919, reversed, without costs, and motions granted, with ten dollars costs, with leave to defendants to withdraw demurrers and to answer on payment of said costs. Order of June 27, 1919, affirmed, without costs.