In the Matter of the Application of THE PEOPLE OF THE STATE OF NEW YORK, by FRANCIS R. STODDARD, JR., as Superintendent of Insurance of the State of New York, for an Order to Take Possession of the Property and Assets of NORSKE LLOYD INSURANCE COMPANY, LIM.

Supreme Court, New York County, November 3, 1924.

**Insurance -- liquidation of Norwegian insurance company doing business in this state — sole test of right to share in distribution of trust funds of foreign insurance company, held in this country for benefit of policyholders and creditors within United States, is residence in United States — New York state superintendent of insurance, as liquidator, holding deposits pursuant to Insurance Law, § 27, should allow claims of residents of United States upon policies written outside United States.**

The sole test of the right to share in the distribution of trust funds of a foreign insurance company, doing business in this state, held by the New York state superintendent of insurance, as liquidator, for the benefit of policyholders and creditors in the United States, is residence in the United States. The state, having assumed jurisdiction of the fund, is duty bound to protect residents and citizens of the United States in said fund, regardless of where the policies were written.

Accordingly, the state superintendent of insurance, who, as liquidator of a foreign insurance company, organized in Norway, but doing business in New York state, holds deposits by said foreign insurance company "for the general benefit and security of all its policyholders in the United States," as provided by section 27 of the Insurance Law, should allow claims by residents of the United States upon policies issued to them by agencies outside the United States.

MOTION for an order approving and confirming report of State Superintendent of Insurance as liquidator of Norske Lloyd Insurance Company, Lim.

*Clarence C. Fowler,* for the Superintendent of Insurance.

*William H. Hotchkiss* and other attorneys, for various claimants.

DONOHUE, J.  This motion is for an order approving and confirming the report of the superintendent of insurance of the state of New York, as liquidator of Norske Lloyd Insurance Company, Lim., a Norwegian corporation, and fixing and determining the claims as rendered for allowance or disallowance, authorizing said liquidator to pay in full all allowed claims and terminating the liability to the extent of such payments made.  The liquidator has divided the claims presented to him for payment into the following three classes:  1. Those who are residents of the United States who dealt with the United States branch of the Norske Lloyd and whose claims are based upon policies issued by such

branch. 2. Those who are residents of the United States, but who dealt with the home office or foreign branches of the Norske Lloyd and whose policies or certificates of insurance were issued outside of the United States. 3. Those who are nationals of countries other than the United States and whose policies or certificates of insurance cover risks outside of the United States and were issued outside of the United States. The liquidator has allowed the claims in class 1 and disallowed the claims in classes 2 and 3. No serious question is raised as to his action concerning the claims in classes 1 and 3, the only question involved on this motion being the disposition made of those claims coming in class 2. The fund in the hands of the liquidator is sufficient to pay both classes 1 and 2. Therefore, the question of priority or preference existing between these two classes of claimants, if any there be, is not involved nor necessary to be decided on this motion. In making this classification of the claims presented to him for payment the liquidator has applied as his basic test: " Was the contract made in or outside of the United States? " and in the use of this test he is vigorously supported by counsel for the Norwegian and British liquidators. If this classification be approved by the court the practical effect will be that after the payment of claims coming under class 1, the fund in the hands of the liquidator would be transmitted to foreign liquidators for their distribution. The Norske Lloyd Insurance Company, Lim., was organized in 1905, under the laws of the kingdom of Norway, and in January, 1916, it was authorized to do a fire and marine insurance business in New York. Pursuant to section 27 of the Insurance Law, before receiving the statutory authorization it deposited $400,000 of securities with the insurance department, which securities were registered " Superintendent of Insurance of the State of New York in trust for Norske Lloyd Insurance Company, Lim., of Christiania, Norway, for the protection of its policyholders in the United States," and also executed a deed of trust to the Guaranty Trust Company of New York, dated July 23, 1915, containing the following clause: " *Second.* The trustees and its successors shall hold the above mentioned property and its proceeds as a fund in trust, out of the proceeds and avails thereof in its hands to pay, or cause to be paid, all lawful and valid claims or demands of policyholders or creditors in the United States of the company, or such *pro rata* share of such claims and demands as may be possibly paid therewith." Section 45 of the Insurance Law then provided that the company should render annual reports to the Superintendent of Insurance as to the business done and assets held by or for it in the United States, for the protection of all policyholders residing within the

United States. Upon receiving the statutory authorization the Norske Lloyd Insurance Company, Lim., opened in New York a branch office and commenced the transaction of its business, both in New York and other parts of the United States, making a deposit of $100,000 with the treasurer of Ohio as a prerequisite for authorization to do the same kinds of business in Ohio, and continued the transaction of its business in this state and country until December, 1920, when it ceased writing through the American branch marine business. On December 31, 1921, there were no marine policies of insurance in force except a few builders' risks, which were not renewed. Its business after December 31, 1921, consisted solely of reinsuring fire risks assumed by direct writing insurance companies. All these fire risks were terminated between August 1, 1921, and December 31, 1921, by canceling these reinsurance treaties. After December 31, 1921, no fire risks written by the United States branch were in force in this state or country. The company becoming insolvent it commenced voluntary liquidation in Norway and its affairs were placed in control of an official board of liquidators. On February 28, 1922, the High Court of Justice in London, Eng., where the company had a branch office writing insurance, appointed a liquidator of the company's affairs in England, and the British liquidator thereupon became a member of the Norwegian official board of liquidators. On November 17, 1922, the Bankruptcy Court in Norway adjudicated the Norske Lloyd Insurance Company, Lim., a bankrupt and appointed an official receiver to take possession of the company's assets and property for distribution among its creditors. On May 3, 1922, upon the application of the New York superintendent of insurance this court made an order directing the superintendent of insurance forthwith to take possession of the property and conserve the assets in the United States of America of the Norske Lloyd Insurance Company, Lim., of Christiania, Norway, and its United States branches, and retain such possession and conserve such assets until further order of this court, and that the superintendent of insurance and his successors in office ascertain, fix and determine the lawful and valid claims, debts and demands of the policyholders and creditors in the United States of America of said Norske Lloyd Insurance Company, Lim., and of the United States branches thereof, and make report thereon to the court with all convenient speed, and pay out of the assets all reasonable and necessary expenses incurred in taking and retaining such assets and in ascertaining, fixing and determining such claims, debts and demands. On May 3, 1922, pursuant to that order and section 63 of the Insurance Law, the New York superintendent of insurance took

possession of the company's assets in the United States, amounting to $1,889,027.23, which on June 16, 1924, had increased to $2,235,733.29, exclusive of the $100,000 deposited with the treasurer of Ohio, who still retains possession thereof. These assets consisted of $203,743.74 deposited for the marine business, $203,328.49 for the fire insurance business, the remainder, the trust fund with the Guaranty Trust Company of New York, and general assets in possession of the marine and fire branches. Claims of $2,586,464.77 have been presented to the state superintendent of insurance. Chapter 308 of the Laws of 1849 appears to be the first statute requiring a foreign insurance corporation as a condition precedent to transacting business in this state to obtain a certificate of authority from the comptroller and issue of such certificate limited upon satisfactory evidence of authorized corporation investment " in the stocks of this state, or the United States, an amount equal to the amount of capital or security required by this act, and such stocks are held in trust by citizens of this state for the benefit and security of such as may effect insurance with him or them." Chapter 466 of the Laws of 1853 elaborated the details of the procedure necessary for a foreign insurance company to follow in order to obtain the certificate of authorization, and continued trust " for the benefit and security of such as may effect insurance with him or them." Chapter 366 of the Laws of 1859 transferred the supervision of insurance to the insurance department by that statute created, headed by the superintendent of insurance. Chapter 367 of the Laws of 1862 revised the insurance laws, continuing the capital conditions for the issue of the authorization certificate, and adding a further condition, " and any company incorporated by or organized under any foreign government shall, in addition to the foregoing, deposit with the superintendent of the insurance department for the benefit and security of policyholders residing in the United States, a sum not less than two hundred thousand dollars in stocks of the United States or of the state of New York." This is the first limitation of this trust to " policyholders residing in the United States." Chapter 888 of the Laws of 1871 defined the capital of the foreign corporations authorized to do business in this state as " the aggregate value of such sums or securities as such company shall have on deposit in the insurance and other departments of this state and of the other states of the United States, for the benefit of policy holders in any of such states or in the United States," and certain specified investments, provided such investments are held in trust " for the general benefit and security of all its policyholders and creditors in the United States." The subsequent amendatory statutes have continued the provisions

of the trust " for the general benefit and security of all its policy-holders in the United States." Section 27 of the Insurance Law in force in 1917 continued the definition of the foreign insurance companies' capital and was repealed and re-enacted in chapter 382 of the Laws of 1919. Certainly the New York superintendent of insurance had no record of policies issued by the foreign insurance companies in other states of the United States, save through the annual January report " of the items making up such capital, and the deductions to be made therefrom " required in section 27 of the Insurance Law. In *Lancashire Ins. Co.* v. *Maxwell*, 131 N. Y. 286, 291, the court, discussing chapter 888 of the Laws of 1871, explained the necessity of defining the " American capital " of a foreign insurance company was because the maximum risk such company could take was ten per cent of its capital. Under this definition a part of the American capital of the foreign insurance company consisted of funds deposited with the insurance departments of the various states of the Union. All these deposits were held in trust for the benefit of American policyholders and creditors. In 1912 the attorney-general of this state (Attorney-General's Report, 1912, vol. 2, p. 165) in an opinion held that the deposit required of a foreign insurance company for " the benefit and security of its policy-holders in the United States " included policy-holders in Porto Rico. The legislature knew of the *Lancashire Ins. Co.* v. *Maxwell Case, supra*, and the attorney-general's opinion, *supra*, and if the legislative intent had been to limit the deposits in New York for the benefit of residents of the United States to those who had secured their policies through a New York agency it would have expressed that intent by appropriate language. Subdivision 5 of section 63 of the Insurance Law defines the superintendent's rights and duties as liquidator: " If, on such application, the court shall direct the superintendent to take possession of the property and conserve the assets of such corporation, the rights and duties of said superintendent with reference to such corporation and its said assets shall be those heretofore exercised by and imposed upon ancillary receivers of foreign corporations in this state." His duties as such liquidator are succinctly defined in *Matter of People* (*City Equitable Fire Ins. Co.*), 238 N. Y. 147, 153. " The purpose of this section is to secure local policyholders and creditors by giving to them a first claim upon the assets that may come into the hands of the superintendent." " The funds deposited with the superintendent are primarily for the benefit of its policy-holders in the United States. Having realized on these funds, having taken possession of all the assets of the corporation within

his reach, having satisfied the claims of such policyholders and of local creditors, what is he to do with the surplus? We think the statute implies the necessary answer. He is an ancillary receiver of a foreign corporation" (p. 156). The General Corporation Law (§§ 104, 182) provides for the appointment of a temporary receiver of a corporation. In the case of a foreign corporation already in the hands of a domiciliary receiver, the New York receiver is ancillary and is appointed to preserve the property *pendente lite* for the protection of the interests of New York creditors to secure an equitable distribution of the funds in this state among the lawful claimants thereto. *Mitchell* v. *Banco de Londres y Mexico*, 192 App. Div. 720, 726, 727, and cases therein cited. It is proper that the court of ancillary jurisdiction should provide for the retention of a fund required by the laws of the state as a condition precedent to an insurance company transacting business in the state until all domestic creditors and policyholders should be paid in full, the fund being primarily devoted to that purpose. 4 Pom. Eq. Juris. (4th ed.) § 1682 (§ 261), p. 3908. In *Matter of Casualty Co. of America* (*Mackey Claim*), 206 App. Div. 314, the court held that the deposit made by the insurance company in Texas constituted a trust fund for the benefit of Texas creditors, and the courts of that state properly decided that that fund should be used in the payment of Texas creditors and should not be turned over to the liquidator of the company in this state. In *People* v. *Granite State Provident Assn.*, 161 N. Y. 492, the court divided the money collected by the New York receiver into two funds: (a) $69,000 proceeds of the foreclosure of mortgages and other obligations due the defendant, a New Hampshire building and loan association, and sale of defendant's New York real estate; (b) $100,000 special deposit under the Banking Law in order to transact business in New York. The $69,000 was directed to be paid to the New Hampshire receiver upon his giving a bond to distribute that fund under the direction of the New Hampshire courts and to pay to each New York creditor and shareholder the same dividend on his claim that may be awarded other creditors and shareholders throughout the country " without any deduction on account of any sum the creditor and shareholder of this state might receive from the special fund" of $100,000. The $100,000 was held to be a trust fund for the exclusive benefit of New York creditors and shareholders to be distributed among them. The sole test for sharing in this $100,000 fund was residence in New York. The question of the place where the defendant's obligation arose is not discussed in the opinion   The case may not be decisive of the question now presented; it does establish the state policy

giving to New York creditors the full protection and benefit of the trust created by depositing the $100,000 with the superintendent of banks. The fact that the courts have denominated the funds of a foreign insurance company, held by the superintendent of insurance of New York and the insurance departments of other states and by trustees in this country for the benefit of policyholders and creditors in the United States, as the foreign insurance company's " American capital " together with the plain language of the statute that such trust funds are for the protection of all its policyholders and creditors within the United States shows conclusively that the sole test of the right to share in the distribution of the trust fund is residence in the United States. This construction is intimated in the opinion in *Matter of People (City Equitable Fire Ins. Co.), supra,* and by the uniform policy adopted by this state since the enactment of the original insurance act of 1853, as amended by chapter 367 of the Laws of 1862, now section 27 of the Insurance Law. Without further citation of authorities, which would be merely cumulative, it seems that the clear purpose and intent of these statutes, under which the liquidator must administer the fund in his hands, was to provide protection for and safeguard the interests of all policyholders and creditors within the United States in the fund in his hands. Even if there were no statutory or judicial authority therefor, I think this construction would be sustained on the broad general theory of governmental policy that the state, having assumed jurisdiction of the fund, was not only in duty bound but would assume, as matter of right, to protect the interests of its residents and citizens in such fund. The objections to the superintendent's report wherein he disallows those claims by residents in the United States upon policies issued to such claimants by agencies outside of the United States are sustained. Such claims should be allowed and classifications denominated " one " and " two " in the report combined into one claim as claims allowed. The order to be entered should provide for filing objections to any specified claim, and for the appointment of a referee to hear all objections to any specific claim already filed or to be filed pursuant to the order to be entered and confirming the report in all other respects. Such order to be settled on two days' notice to all attorneys appearing in the proceeding.